**Norma F. JONES, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 82–2286.

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1983.

Decided March 23, 1983.

James R. Jansen, Habush, Habush & Davis, S.C., Curtis M. Kirkhuff, Madison, Wis., for plaintiff-appellant.

Richard E. Cohen, Asst. U.S. Atty., John R. Byrnes, U.S. Atty., Madison, Wis., for defendant-appellee.

Before CUMMINGS, Chief Judge, and WOOD and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

Following a slip and fall accident on a sidewalk adjacent to a United States Post Office, and after denial of a claim presented to the Postal Service Law Department as required by 28 U.S.C. §§ 2401 and 2675, plaintiff brought suit against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and 28 U.S.C. § 1346(b). Plaintiff-appellant now appeals from the district court order granting summary judgment for the United States. We affirm.

## I.

The facts, as set forth in the district court opinion, are not in dispute. Briefly, defendant is the lessee of real property located on the northeast corner of the intersection of Windsor Road (east-west) and Windsor Avenue (north-south) in Windsor, Wisconsin. The sidewalk on Windsor Road in front of the post office is part of the leased property. The sidewalk on which plaintiff fell, which runs parallel to the west side of the post office, is not part of the leased premises, but falls within the public street dedication of Windsor Avenue. The post office makes no attempt to control the use of the walk.

Windsor Avenue was surfaced with gravel, and loose gravel was frequently thrown up on the sidewalk by passing vehicles. The postmaster and postal employees had for some thirteen years regularly (once or twice a day) shoveled the walk and swept it free of gravel. There is no indication that the municipality had ever cleared the walk. According to the postmaster, the walk had been swept about 9:30 on the morning of the accident, August 7, 1978. At about 11:00 am that day, plaintiff drove up to the post office, parking on the wrong side of the street, southbound on Windsor Avenue next to the sidewalk. As she was returning to the car from the post office she allegedly slipped on the gravel and fell. Postal employees heard her cries for help, and found her by her open car door lying on the sidewalk.

## II.

■ It is quite clear that under Wisconsin law [1] maintenance of public sidewalks is a nondelegable municipal duty.[2] There are, however, two circumstances under which an

---

1. Under 28 U.S.C. § 2674 of the Federal Tort Claims Act, the law of the place where the allegedly negligent act occurred is to be applied.

2. "Nondelegable" means that a municipality cannot delegate responsibility (and hence liability) for public walks by means of an ordinance. See *Hagerty v. Village of Bruce,* 82 Wis.2d 208, 262 N.W.2d 102 (1978). Violation of a local ordinance requiring property owners to remove snow did not give rise to a cause of action for injury sustained because of failure to clear the walk. (The property owner would be subject only to a fine for failure to comply with the ordinance.)

 In the case at bar, there is no contention that the township of Windsor attempted to delegate its responsibility for the walk. Neither is there any suggestion that the municipality would not

be liable in this situation. While the record is silent on this point, we suspect that the real reason this case was brought was plaintiff's failure to preserve a cause of action against the municipality. Under Wis.Stats. § 895.43, an injured party must give written notice of the claim to the municipality within 120 days. Suit must be brought within six months of the denial of such claim. Wis.Stats. § 62.25. See *Pattermann v. City of Whitewater,* 32 Wis.2d 350, 145 N.W.2d 705 (1966); *Jasenczak v. Schill,* 55 Wis.2d 378, 198 N.W.2d 369 (1972). The complaint in this case was filed almost two years after plaintiff Jones slipped on the gravel, and it was only in the course of discovery that the parties determined that the sidewalk on Windsor Avenue was not part of the leased premises. The summary judgment motion was filed by the Government after this fact emerged.

abutting landowner (or lessee) may nevertheless be liable to those injured on the public way. First, if the landowner exercises such dominion and control that the public way becomes a "place of employment" within the meaning of the Wisconsin safe place statute, Wis.Stats. §§ 101.01(2)(a) and 101.11, the landowner is liable for injuries attributable both to the hazards he creates and those that he fails to remove. See, e.g., *Schwenn v. Loraine Hotel Co.,* 14 Wis.2d 601, 111 N.W.2d 495 (1961), for an illustration of the degree of private control necessary to make a public way a "place of employment."

Second, the Wisconsin Supreme Court has stated that in the absence of dominion and control sufficient to bring the safe place statute into play, "the general rule in Wisconsin is that abutting landowners (or lessees) are liable for only such defects or dangerous conditions in a public way as are created by active negligence on their part." *Peppas v. City of Milwaukee,* 29 Wis.2d 609, 617, 139 N.W.2d 579, 583 (1966) (citations omitted). The landowner was not liable for the natural deterioration of a concrete drive which provided access to his property; the city alone was liable. Similarly, defendant landowner in *Jasenczak v. Schill,* 55 Wis.2d 378, 198 N.W.2d 369 (1972) was not liable for injuries caused by a defective sidewalk despite the fact that he had been aware of the problem for some six years; he had no role in creating the defect. (The action against the city in this case was time-barred.)

In a case very similar to that at bar, *Petroski v. Eaton Yale & Towne, Inc.,* 47 Wis.2d 617, 178 N.W.2d 53 (1970), plaintiff fell on the severely deteriorated walk running along his employer's property. The employer had constructed the sidewalk within the street limits some years earlier, and had subsequently kept the walk free of ice and snow. The Wisconsin Supreme Court affirmed a directed verdict in favor of defendant, stating that "although the defendant performed the same duties that any abutting householder would perform in connection with snow removal," there was no indication of dominion and control sufficient to turn the walk into a "place of employment" and defendant was not responsible for creating the problem. The Court held that "there is no obligation on the abutting landowner to keep the sidewalk in front of his premises in repair or in a safe condition for public travel." 47 Wis.2d at 620–21, 178 N.W.2d at 55–6.[3] There is no hint in the case that habitual snow-removal, although insufficient to characterize the walk as a place of employment, could itself be an independent basis of liability.

■ Applying Wisconsin "public sidewalk" law, the district court concluded that Norma Jones had no cause of action against the post office. The post office did not exercise sufficient dominion and control over the walk to render it a "place of employment," and there is no allegation that the post office caused the accumulation of gravel, or even made the walk more hazardous by negligently rearranging the gravel as it swept. Plaintiff's only claim is that postal personnel did not go out and sweep the morning's accumulation of gravel tossed up by passing cars (including, quite possibly, plaintiff's). The post office's awareness of the allegedly hazardous condition of the walk is legally irrelevant.

### III.

Aside from her quibble with the precedential value of *Petroski,* appellant expressly concedes all of the above. "Plaintiff does not challenge the findings of the district court concerning the location of the sidewalk in relation to the leased premises

---

3. Appellant argues that this case is not controlling because of its procedural posture. Reply Brief at 2–4. Because no post-trial motions had been made prior to the appeal (on whether the walk was a place of employment), review was not available as a matter of right; review was available only in a case of miscarriage of justice and upon a finding that appellant should clearly have prevailed. Under this standard the Supreme Court concluded that review was not warranted. However, "in reaching that conclusion, we in fact decide the case upon the merits." 47 Wis.2d at 620, 178 N.W.2d at 55.

or the findings concerning the lack of exclusive control or active negligence." Brief of Appellant at 4. Appellant also apparently concedes that the action cannot be maintained under "public sidewalk case law." *Id.* at 9–10. Rather, plaintiff has brought this appeal "to challenge the district court's refusal to recognize a well-settled and long-established theory in Wisconsin law under which the plaintiff can maintain this action." *Id.* at 4. Plaintiff-appellant argues that while the municipality could not delegate responsibility, the post office could assume responsibility gratuitously, and having done so is liable for failure to exercise reasonable care in the undertaking. The applicability of this theory of liability is the only question presented on appeal.

For this rule of liability, plaintiff-appellant relies upon *American Mutual Liability Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 48 Wis.2d 305, 179 N.W.2d 864 (1970). An employee was fatally injured by steam from a ruptured fitting on a boiler. Plaintiff insurer paid workman's compensation and then sued the defendant boiler insurer on the theory that St. Paul had undertaken to perform boiler inspections, and had done so negligently. Both tort and contract issues were involved. While the written insurance contract merely permitted St. Paul to make inspections, St. Paul did make inspections and the State Industrial Commission refrained from making its own inspections in express reliance on St. Paul. The employer received inspection reports from St. Paul and had complied with all recommendations made. The lower court granted summary judgment for defendant on the grounds that St. Paul had assumed no contractual liability. The Wisconsin Supreme Court reversed, finding that the claim of gratuitous assumption and negligent performance of a duty stated a cause of action.

In holding that the facts stated a cause of action, the court cited the Restatement (Second) of Torts § 324A [4] and noted that under *Wulf v. Rebbun,* 25 Wis.2d 499, 131 N.W.2d 303 (1964), Wisconsin law governing gratuitous assumption of duty cases was already in accord with the Restatement. (In *Wulf,* the driver of a truck parked in an alley negligently signalled a motorist to proceed out of the alley and into a street where he struck a car in which plaintiff was a passenger.) The court also noted that when a person undertakes to perform an act which if not done with care and skill will be highly dangerous to others, the law imposes the obligation to exercise such care and skill. 48 Wis.2d at 316, 179 N.W.2d at 870.[5] The *American Mutual* court cited no "sidewalk" cases.

Plaintiff-appellant also relies upon *Coffey v. City of Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132 (1976) and *Maynard v. City of Madison,* 101 Wis.2d 273, 304 N.W.2d 163 (Wis.App.1981). In *Coffey,* plaintiff's office sustained damage in a fire because the standpipes were defective and failed to carry enough water for the firemen. Plaintiff sued the city and the city water pipe inspector. The only issue in the case was whether defendants had assumed a duty to the plaintiff as well as to the public in general. Citing the Restatement § 324A and *American Mutual,* the court held that such a duty could be founded on foreseeability, and that a building inspector must be held to have foreseen that his alleged negligence would cause harm to individuals. A gratuitous undertaking of duty was not at issue. In *Maynard,* the Court of Ap-

---

**4.** Sec. 324A. Liability to Third Person for Negligent Performance of Undertaking.

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

**5.** The court held that reliance was not essential to recovery, being a doctrine more applicable to nonfeasance than to misfeasance cases. The court went on to note, however, that plaintiff's affidavits indicated extensive reliance. 48 Wis.2d at 314, 179 N.W.2d at 868.

peals, citing the Restatement § 324A, and *American Mutual, Wulf,* and *Coffey,* found that the city and the police had voluntarily assumed a duty to protect plaintiff police informant's identity, and had been negligent in later disclosing it (to plaintiff's considerable discomfort among her friends). Neither *Coffey* nor *Maynard* cited any "sidewalk law."

### IV.

While we do not quarrel with appellant's assertion that there are indeed circumstances under which Wisconsin law imposes liability on one who, having no duty to act, gratuitously undertakes to act and does so negligently, we are quite unpersuaded that such a rule is applicable to the circumstances of this case. Wisconsin does not provide a smorgasbord of liability rules from which plaintiff can pick and choose.[6]

In practice there appears to be a number of distinct fact patterns in which questions of assumption of duty may arise. Each involves a characteristic constellation of such factors as reliance, the parties' position to know of or determine defects, degree of technical knowledge required, foreseeability of risk, degree of inherent risk, implicit or explicit promises or contracts made, limits in time or scope of the duty assumed, etc.

The Restatement attempts to develop rules of liability appropriate to the various fact patterns. Section 324A is to be interpreted in this context.[7] The Comments to Section 324A clarify the three subsections.[8] Subsection (a) imposes liability on one who voluntarily attempts, *e.g.,* to make repairs on behalf of the owner of a building and only succeeds in creating an even more dangerous situation. Under subsection (b) the existence of an owner/employer's duty is clear, and the question is whether the agent/employee took on the duty in question (such as keeping certain premises in repair); typical defendants are hotel, building and store managers, mine foremen, bus drivers, and factory superintendents. Typical subsection (c) defendants are boiler inspectors, elevator inspectors, gas company inspectors, watchmen, railway signalmen, and garage mechanics. (No "public sidewalk cases" are cited under Section 324A.)

Under subsections (a) and (b) there is often an express contractual relationship between the principal and his agent, and there may be an implied agreement to perform particular tasks. Although reliance is the label for subsection (c), it would seem to be a consideration in (a) and (b) as well. Subsection (c) also apparently covers not garden variety maintenance, but jobs that are inherently dangerous or require a high degree of expertise; building owners and the public have little choice but to rely on such experts. In all the Section 324A cases, the duty allegedly undertaken is, as the Restatement puts it, one *"necessary* for the protection of a third person or his things" (emphasis added); that is, safety requires that the task be performed, and plaintiff is often in no position to determine whether conditions are safe.

In all of these cases, the duty allegedly assumed is identifiable in scope—to maintain the hotel during one's tenure as night manager, to perform semi-annual boiler in-

---

**6.** Plaintiff-appellant complains that the district court's analysis of the case is "ridiculous," "unsupportable and ill-advised" (Brief of Appellant at 10), and "stifling" (Reply Brief at 2) because it applied "sidewalk" precedents rather than rules of liability developed in boiler inspection cases.

**7.** Section 324A is one of 15 sections comprising Topic 7 "Duties of affirmative action to continue services gratuitously rendered or to perform a gratuitous undertaking," and is one of five sections within Title B of Topic 7, "Duty to aid others and services gratuitously rendered or undertaken." Section 324A is the third party counterpart of Section 323 which deals with negligent performance of an undertaking to render service to another. According to the Reporter's Notes and the annotations to Section 323, the most common fact patterns involve a defendant who undertakes to render first aid to another and then fails to look after him, a gratuitous agent who fails to carry out his principal's instructions, or an inspector who is negligent in performing inspections. Only two "sidewalk" cases are cited under Section 323; in each, plaintiff-invitee slipped on defendant-homeowner's front steps.

**8.** See footnote 4, *supra.*

spections until further notice, to fix the dangling light fixture, to signal that the 5:00 train has cleared the crossing. The liability rules identify who will be responsible in situations in which several parties arguably are in control, and consequently determine who will indeed have the incentive to take steps to prevent accidents. *American Mutual* (boiler inspection) and *Wulf* (signalling) fit this paradigm.[9] Both involve assumption of a discrete task, an implied representation by defendant of special knowledge or expertise, and reliance by plaintiff and others.

█ The public sidewalk cases simply do not fall within the type of situation covered by Section 324A. No expertise was required, sweeping is not "necessary" within the meaning of 324A, and plaintiff here was in as good a position as anyone else to observe the condition of the sidewalk. (Plaintiff was apparently well aware of the problems with gravel on the walk; according to the postmaster, she made at least one visit per day to the post office.) There is further no indication of reliance by plaintiff.[10] Sidewalk clearing is also a complete-

ly open-ended task—unless one can argue for a snowfall by snowfall (or pebble by pebble) assumption of a series of discrete tasks. There is no way to determine the duration of the post office's alleged duty, and no obvious way for the post office to opt out of the task allegedly undertaken. (To whom would the postmaster have given notice that she was tired of clearing the walk?) We also note that this is not a case in which responsibility will slip through the cracks in the absence of a rule imposing liability on the abutting landowners; the municipality is at all times liable.[11]

In short, Restatement Section 324A and the Wisconsin cases citing it provide absolutely no support for plaintiff-appellant's position. Counsel has made a valiant attempt to salvage plaintiff's case by a creative application of an unusual theory of liability, but we find the argument to be without basis in either common sense or Wisconsin law.[12]

### V.

Appellant is asking us to create an open-ended rule of liability for all Wisconsin

**9.** *Maynard* is not quite on point and might have been better analyzed under Section 323; the police department promised her anonymity and then proceeded to reveal her identity. The case does involve detrimental reliance and an explicit promise to assume responsibility, elements common to cases under Sections 323 and 324A.

**10.** It is conceivable that liability could be founded upon reliance even in the context of a public way. In *Indian Towing Company v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the Court, *per* Justice Frankfurter, held that the allegation that the wreck of a barge was caused by the negligence of the Coast Guard in failing to keep a lighthouse light burning stated a cause of action under the Tort Claims Act. "[I]t is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." *Id.* at 64–65, 76 S.Ct. at 124. Perhaps a blind postal patron who regularly made her way to the Windsor Post Office at a certain time of day could show that she had justifiably relied on sidewalk clearing by the post office. The *Indian Towing* situation, however, is very like that contemplated by Restatement Sections 323 and 324A (and is indeed cited in the annotations to 323): the lighthouse beacon was necessary for safety, and tug boat captains had

little independent means of avoiding danger short of skirting the entire area. Further, keeping a light on during hours of darkness is a well-defined task, and the Coast Guard had established means of notification available—via U.S. Coast Guard "light lists" and navigation charts—should it decide to abandon the Chandeleur Island lighthouse.

**11.** Whether this rule of liability is in fact sufficient to promote sidewalk clearing by the municipality is another question. It is clear, though, that once a compensable injury has occurred, it is the municipality that would pay damages.

**12.** It is true, as appellant asserts, Reply Brief at 3, that the Wisconsin Supreme Court in *Petroski, supra,* did not explicitly entertain and reject appellant's theory. But we think it highly unlikely that the Court would, if it considered the matter, adopt a position so at variance with its prior holdings. At oral argument, both parties agreed that the applicable Wisconsin law is clear, and that the case can be decided without certifying the question to the Wisconsin Supreme Court. See Circuit Rule 13 and Wis. Stats. ch. 821.

property owners and lessees who, either pursuant to ordinance or out of the goodness of their hearts, clear adjacent public walks. By statute and through case law, the State of Wisconsin has expressly rejected such an imposition of liability. The judgment of the district court is AFFIRMED.