**John V. ARVANIS, d/b/a, Industrial Contractors, Plaintiff-Appellant,**

v.

**NOSLO ENGINEERING CONSULTANTS, INC., Noslo Engineering Corporation, and the United States of America, Defendants-Appellees.**

**BAER ELECTRIC CO., INC., an Illinois Corporation, Plaintiff-Appellant,**

v.

**NOSLO ENGINEERING CONSULTANTS, INC., Noslo Engineering Corporation & The United States of America, Defendants-Appellees.**

Nos. 83–1670, 83–1766.

United States Court of Appeals, Seventh Circuit.

Submitted July 2, 1984.[*]

Decided July 31, 1984.

Rehearing and Rehearing En Banc Denied Aug. 27, 1984.

---

\* After preliminary examination of the briefs, the court notified the párties that it had tentatively

Samuel S. McHard, Katz, McAndrews, Durkee, Balch & Lefstein, Rock Island, Ill., Richard W. McCarthy, Kolckau, McCarthy, Ellison, Rinden & Hartsock, Rock Island, Ill., for plaintiffs-appellants.

Gerald D. Fines, U.S. Atty., Springfield, Ill., L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., Major Thomas G. Bowe, Headquarters Dept. of Army, DAJA-Ltd., Washington, D.C., for defendants-appellees.

Before BAUER, CUDAHY and ESCHBACH, Circuit Judges.

PER CURIAM.

The ultimate question we are asked to decide is who is left holding the bag when a prime contractor on a federal construction project fails to obtain a Miller Act payment bond and then defaults without paying his subcontractors. We conclude that the answer is the hapless subcontractor, not the United States.

## I.

On a private construction project, mechanic's and materialmen's liens secure payment of the subcontractors. Such devices are obviously unavailable on a

concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

government project; sovereign immunity bars liens against government property. Equally obvious, potential subcontractors would be very reluctant to participate if they had nothing better than the status of a general creditor of the prime contractor to secure payment. The answer to this problem was the Miller Act, 40 U.S.C. §§ 270a–270d, 49 Stat. 793 (1935) (as amended). Section 270a provides that the prime contractor must post a payment bond to guarantee payment of the subcontractors. Section 270b provides that if not paid, the subcontractor may sue on the bond in federal district court.

Defendant Noslo Engineering Consultants, Inc. was the prime contractor for the installation of a "noise attenuator" at the Rock Island, Illinois United States Army arsenal. Plaintiffs-appellants John V. Arvanis and Baer Electric Co., Inc. were subcontractors. Unbeknownst to them, Noslo failed to obtain a payment bond. Noslo also failed to complete the project or pay the two subcontractors for the materials and services they had supplied, and subsequently filed for bankruptcy. Arvanis and Baer then filed essentially identical suits against Noslo and the United States, each seeking to recover the full amount of his damages ($105,080 for Arvanis and $30,464 for Baer) from each defendant.[1] Noslo failed to answer, and default judgments were entered. The claims against the government were dismissed on grounds of sovereign immunity and lack of subject matter jurisdiction.

Arvanis and Baer appeal from the district court decision dismissing their three-count amended complaint against the United States. Count III was based on the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq., and 28 U.S.C. § 1346(b), and alleged that the government was negligent in failing to require Noslo to post a Miller Act payment bond. Count IV, premising jurisdiction on the Miller Act and 28 U.S.C. § 1331 (federal question jurisdiction), also alleged a failure to require the payment bond. Count V again claimed to base jurisdiction on § 1331 and the Miller Act, and alleged both that the government was negligent in failing to retain sufficient progress payments and should thus be liable to the subcontractors, and that plaintiffs should be compensated out of the $50,000 retainage which the government did hold.[2] On appeal, plaintiffs continue to argue that the suits were improperly dismissed as the United States had implicitly waived sovereign immunity under the Miller Act or the Tort Claims Act, or both.

II.

*Count IV: Negligence Under the Miller Act*

■ Appellants argue that the Miller Act requires the government to insist that its contractors furnish Miller Act payment

---

1. Although never formally consolidated before the district court, the two cases were treated jointly. The cases have been consolidated on appeal.

2. The original identical five-count complaints were filed April 14, 1982. Counts I and II alleged fraud and breach of contract against Noslo Engineering, and were premised on diversity jurisdiction. Noslo never appeared, and a default judgment for the full amount of the claim (presumably uncollectible) was entered early in the proceedings; Noslo is not involved in this appeal. Counts III, IV, and V were directed at the United States, and the only jurisdictional basis cited was the Miller Act. Count III alleged negligence on the part of the federal contracting officer who failed to insist on the posting of a Miller Act payment bond. Count IV alleged an oral contract between the United

States and the subcontractors; this count was voluntarily dismissed. Count V argued unjust enrichment. The government argued that the Miller Act did not waive sovereign immunity, and that any recovery would have to be based on the Federal Tort Claims Act. The case proceeded on both Miller Act and FTCA theories, and was dismissed on December 7, 1982 for lack of jurisdiction under either the Miller Act or the FTCA. On December 17, 1982, plaintiffs requested leave to amend the complaints to conform to the issues actually heard and decided. Leave to amend to substitute the three new counts was granted on January 31, 1983, and new Counts III and IV were simultaneously dismissed. After briefing on the new Count V (the retainage issue), it too was dismissed on March 22, 1983. Plaintiffs then filed the present timely appeal.

bonds. This is incorrect. The statute requires only that contractors obtain performance and payment bonds. The statute places no affirmative obligation on the government, and says absolutely nothing about what happens when the contractor fails to furnish the bond. The Act grants a very narrow and specific right to those in appellants' position: the right to sue on the bond (if there happens to be one) "in the name of the United States for the use of the person suing." 40 U.S.C. § 270b(b). (The United States is thus aligned on the plaintiff's rather than the defendants' side by the equation, providing an additional reason for concluding that the United States cannot properly be a defendant in a Miller Act suit.) There is clearly no waiver of sovereign immunity here. There does seem to be a gap in the statute; there is no provision for the contingency that both the contractor and the government contracting officer will ignore the bonding requirement. However, this is not a gap that we can fill with a remedy—especially in view of the very narrow remedy actually granted by the statute. No citation is needed to reject appellants' suggestion that 28 U.S.C. § 1331 waives sovereign immunity. It merely gives the district court jurisdiction to hear federal claims that are not otherwise barred.

## Count III: Negligence Under the Tort Claims Act

■ Three other circuits presented with a Tort Claims Act suit against the United States for failure to require a Miller Act bond have given the argument short shrift, deciding it on the basis of a simple syllogism. The FTCA provides that the government may be sued in tort only in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1976). Because the Miller Act deals with federal contracts, a private party could never be in a position to require a Miller Act bond, and thus of course could never be liable for failure to require the bond. In the absence of such liability, the analogy required for governmental liability under the FTCA never comes into play.[3] McMann v. Northern Pueblos Enterprises, Inc., 594 F.2d 784 (10th Cir. 1979); Devlin Lumber and Supply Corp. v. United States, 488 F.2d 88 (4th Cir. 1973); United States v. Smith, 324 F.2d 622 (5th Cir.1963). This Circuit has not previously been faced with the question.

We think the syllogistic analysis assumes the answer to the question at issue. It should be possible to define governmental action in almost any situation narrowly enough to render it "uniquely governmental" (e.g., no private party could negligently drive a truck carrying the U.S. mail). The better approach is to focus on the behavior involved, not the legal labels applied, and then look for analogies with private conduct. For example, private parties in many situations are required by contract or by state law to obtain bonds—and often fail to do so.

Appellants argue that Illinois has adopted the "good Samaritan" rule as set forth in Section 324A of the Restatement of Torts (Second). Under this theory, the United States, knowing that a third party (the subcontractor) would be affected by its direct dealings with the prime contractor, had gratuitously undertaken a duty of care towards the subcontractor, and can be held

3. The argument bears some similarity to that rejected in *Indian Towing Company v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). The Coast Guard voluntarily undertook to operate a lighthouse on Chandeleur Island. The light was out, and a barge owned by plaintiff ran aground and was wrecked. The Supreme Court held that plaintiff could maintain a negligence suit under the Tort Claims Act. While lighthouse operation was done only by the Coast Guard, there is nothing uniquely governmental about this service. At other times and places (e.g., England) lighthouses have been privately maintained, financed by fees from shipping companies desiring the service. Similarly, there is nothing uniquely governmental about construction contracts, but it is true that *federal* contracts are unique, and that the Miller Act with its bonding requirement applies only to federal contractors. Thus it is true that no Miller Act question could arise under state law.

liable for a breach of that duty. Appellants specifically argue that this case is analogous to *United Scottish Ins. Co. v. United States*, 692 F.2d 1209 (9th Cir.1982), in which the United States was held liable under the FTCA for injuries resulting from an airplane crash; Federal Aviation Administration (FAA) inspectors were negligent in certifying that the aircraft met fire safety standards. The government argued that there was no private activity analogous to an FAA inspection. The Ninth Circuit, applying the good Samaritan (Section 324A) doctrine, found liability for a voluntarily assumed, negligently performed duty to third parties (passengers) who were in no position to do anything other then rely on FAA safety inspections. The Supreme Court, however, unanimously reversed in this and a companion case, *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. United States*, 692 F.2d 1205 (9th Cir.1982). *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, —— U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).[4]

Even without the *Varig* reversal, we would find appellants' good Samaritan argument foreclosed. In *Jones v. United States*, 703 F.2d 246 (7th Cir.1983), this Circuit had an opportunity to explore the ramifications of Section 324A, and it is not necessary to repeat the analysis here. Suffice it to say that we concluded that 324A was primarily applicable to situations in which defendant has undertaken to provide services (e.g. inspection or repair services) that are necessary for a third party's physical safety, and which the third party is unable to undertake for himself—due either to lack of expertise or an inability to discern or discover hidden hazards. Reliance by the third party is usually required.[5] In *Jones*, we concluded that the United States was not liable for a slip and fall accident on a sidewalk adjacent to a United States Post Office. While postal employees routinely swept the walk clear of gravel, this gratuitous undertaking—although public-spirited—was not "necessary" for anyone's safety (and in no way worsened the situation), and plaintiff was in as good a position as anyone else to determine the safety of the walk. For similar reasons, we reject appellants' arguments under § 324A. First, it isn't even clear that the United States undertook any duty. It merely executed a contract (in retrospect, ill-advised) with Noslo. Even assuming that the subsequent effect of that contract on the subcontractors amounts to the sort of affirmative assumption of duty contemplated by § 324A (the real problem here being nonfeasance or a lack of supervision by the government, while the good Samaritan doctrine refers to misfeasance—by one who needn't have acted at all), appellants need not have passive-

---

**4.** The case was decided on the "discretionary function" exception to the FTCA. The Court explicitly did not reach the argument that the FAA inspections were purely governmental activity having no counterpart in private conduct. *Indian Towing* was distinguished in that the government there had expressly disavowed any "discretionary function" argument. While *Varig Airlines* nevertheless casts some doubt on the reasoning of *Indian Towing*, the situations are factually distinguishable. The Coast Guard had publicly opted to operate the lighthouse and published its location on navigation charts and "light lists," and it is customary to keep such lights in continuous rather than intermittent working order. According to the Supreme Court in *Varig Airlines*, FAA safety inspections are made on a spot check basis, most inspections are delegated to industry personnel, and the goal is "promoting safety", "not insuring it." The FAA inspection statute is thus largely horta-

tory. Perhaps the Miller Act likewise does no more than encourage government contracting officers to insist that contractors obtain Miller Act bonds.

The *Varig Airlines* decision is also arguably limited to the regulatory context. However in another part of the opinion, the Court contrasts the situation presented with the "common law torts" that the legislative history indicates the Tort Claims Act was designed to encompass. *See Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). While failure to require a Miller Act bond is not an omission made in the course of regulation, neither is it a garden variety tort.

**5.** *Indiana Towing* provides the classic example of this paradigm. *See Jones, supra*, n. 10 at 251, for a further discussion of this case in the context of Sections 323 and 324A of the Restatement.

ly relied on the government to protect their rights. Unlike the barge captain in *Indian Towing*, plaintiffs were not forced to navigate around submerged rocks. They could have inquired of the contracting officer whether a payment bond had been posted. Any subcontractor is now certainly well-advised to do so.

In the absence of any persuasive analogy with private conduct, we conclude that appellants cannot maintain a Tort Claims action against the United States. We also note an additional reason for rejecting the Tort Claims approach: it would allow appellants to achieve by indirection a result that they could not reach directly under the Miller Act.[6]

### Count V: The Retainage

■ The argument that the United States is liable because it "should have" paid closer attention to the prime contractor's problems and withheld more of the progress payments is easily dismissed.

Appellant argues only Miller Act and federal question jurisdiction for this claim, and we have already concluded that neither statute waives sovereign immunity. It might be possible to frame the claim in a manner that would fall within the FTCA; under state law, a party that negligently failed to supervise some activity under its control might well be liable to another party injured thereby. However, such an expansive reading of the Tort Claims Act would swallow up sovereign immunity; in almost any situation, the government "might have" done a better job of keeping track of its affairs. In any event, a successful claim for monies not retained would be just the sort of direct raid on the treasury that provides the classic argument for sovereign immunity. *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). A narrow exception to sovereign immunity is made for suits seeking injunctive relief for the very reason that no claim

6. The government also argues that Count III could be dismissed for failure to exhaust (or invoke) administrative remedies. Section 2675(a) of Title 28 provides that a tort claim against the United States shall not be instituted unless the claimant has first presented his claim to the appropriate federal agency and the claim has been finally denied by the agency. The claimant may construe a failure to rule on the administrative claim within six months as a final denial. Section 2401(b) of Title 28 provides that a tort claim is barred unless plaintiff presents his claim to the agency within two years after the claim accrues, or unless suit is commenced within six months after the final agency denial.

Plaintiff Arvanis filed a complaint with the agency on December 29, 1982. While we don't know exactly when the claim accrued, Noslo did not become the prime contractor until January 8, 1981, less than two years earlier. The filing of the administrative claim was thus timely, but it was not filed until *after* the district court had already dismissed the original complaint dealing with the same claims. While there is an apparent reversal of the proper order for filing administrative claims and civil actions, there is an interesting twist here in that the complaint was not instituted as a tort claim. The tort claims procedures of 28 U.S.C. § 2671 *et seq.* are thus arguably inapplicable. Plaintiff Arvanis thought he was filing suit under the Miller Act, which contains no reference to tort claims procedures; the only problem is that the Miller Act provides no basis for jurisdiction over the Unit-

ed States. It was the district court that conceptualized the case as a tort claim, and decided it on that basis. By the time plaintiff did file a complaint under the FTCA (the amended complaint of January 31, 1983), the administrative claim had been filed, but there was no final denial and six months had not yet passed. The claim was thus premature—but then, having been granted leave to amend his complaint, plaintiff could not very well have delayed an additional five months waiting for either a denial or inaction. As it happened, the claim was denied March 21, 1983, the day before the entire case was finally dismissed, and Arvanis filed the denial with the district court on April 7, 1983, the same day he filed his notice of appeal.

Fortunately we do not need to decide whether *the district judge was without jurisdiction to* decide the case on the basis of what he recognized to be a tort claim incorrectly denominated a Miller Act claim, or whether plaintiff should (or could) have stalled on amending his complaint. The case is adequately disposed of on review of the grounds actually reached by the district court. (Besides, plaintiff is now time-barred from filing a new suit if this one is dismissed on procedural grounds, and plaintiff should be assured that the outcome would not have been different had the procedural history been less ambiguous.)

There is no indication in the record that plaintiff Baer ever filed an administrative complaint. Again, given the jurisdictional confusion, we will decide the case on the grounds reached by the district court.

on the treasury is involved. *See Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1948); *Clark v. United States,* 691 F.2d 837 (7th Cir.1982).

The argument for allowing a claim against the retainage is thus superficially more attractive. By hypothesis there is a separate fund—aside from the general treasury—to which plaintiff can look for payment. That was part of this court's rationale in allowing suit in *Schlafly v. Volpe,* 495 F.2d 273 (7th Cir.1974) (suit brought to compel the expenditure of authorized, yet frozen, federal highway funds). In this situation, the separate fund argument evaporates upon closer inspection. Presumably the progress payments are still retained because of the lack of progress on the project. The record indicates that the noise attenuator was unsatisfactory upon installation, and Noslo failed to fix it within the additional 90 days allowed. It seems likely that any retainage would be (has been?) expended in an effort to obtain a functioning noise attenuator, and this brings us back to a direct claim against the treasury. Perhaps this is why plaintiffs cite no cases in which a subcontractor has successfully laid claim to the retainage.[7]

### III.

The result is, as the district court put it, unjust. A subcontractor who fulfills his part of the bargain should not suffer because the prime contractor defaulted, and the government contracting officer had not insisted on compliance with the Miller Act. We agree that there is a practical problem (how widespread we do not know) that is not addressed by the Miller Act, but that is a problem that can only be addressed, and redressed, by Congress.

---

7. In *United Electric Corp. v. United States,* 647 F.2d 1082 (Ct.Cl.), *cert. denied,* 454 U.S. 863 (1981), the subcontractor sued the government (after the surety refused to pay on the Miller Act bond, which was allegedly inadequate anyway), alleging that the government had negligently failed to comply with the Miller Act, thus creating an equitable lien against the retainage, which was more than adequate to cover the

The judgment of the district court dismissing the amended complaint is

AFFIRMED.

subcontractor's claim. The court concluded that the subcontractor lacked standing to pursue the claim in the Court of Claims (there was no privity of contract with the government), but described this outcome "not a happy result," and stressed that the government might voluntarily make payment and had a moral obligation to do so if funds remained after the contract was completed.