Fletcher, Circuit Judge, dissented and filed opinion.

**WOODBRIDGE PLAZA, a general partnership, Plaintiff-Appellant,**

v.

**BANK OF IRVINE, et al., Defendants-Appellees.**

No. 85–5997.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1986.

Submission vacated Dec. 16, 1986.

Resubmitted April 10, 1987.

Decided April 17, 1987.

Richard D. Keys, Newport Beach, Cal., for plaintiff-appellant.

Rex E. Lee, Howard Gest, Los Angeles, Cal., for defendant-appellee.

Jack T. Kerry, Los Angeles, Cal., for amicus curiae (defendants-appellees).

Before SCHROEDER and FLETCHER, Circuit Judges, and VOORHEES,[*] District Judge.

SCHROEDER, Circuit Judge:

The principal issue in this appeal is a question of California state law. Appellant contends that the Federal Deposit Insurance Corporation (FDIC), acting pursuant to California law as receiver of a state-chartered bank, violated California statutes requiring equal treatment of bank creditors. Appellant's claim against the bank was not included in a purchase and assumption agreement executed by the FDIC as receiver of an insolvent bank, and no provision was made for satisfaction of the claim. Appellant seeks a declaratory judgment and eventual damages against the FDIC.

Appellant, Woodbridge Plaza, originally filed this action in Orange County Superior Court, and the FDIC removed the action to United States District Court pursuant to 12 U.S.C. § 1819 (Fourth), which provides:

[T]he Corporation shall ... have power ... To sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature ... to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and the Corporation may, without bond or security, remove any such action ... from a state court to the United States district court ..., except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States.

12 U.S.C. § 1819 (Fourth). The district court dismissed the action, holding that the FDIC had not violated California law. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

The panel requested supplemental briefs on the issue of federal jurisdiction in light of the last phrase of the statute quoted above. Both sides responded that federal jurisdiction exists because the suit seeks to impose liability on the corporation and therefore involves alleged obligations of the corporation. We agree.

FACTS

In 1978, Woodbridge Plaza entered into a written lease agreement with the Bank of Irvine in which Woodbridge as landlord agreed to lease real property to the bank to be used as a bank office. In 1984, a dispute arose between Woodbridge and the bank, giving rise to a lawsuit filed in Orange County Superior Court. In that suit,

[*] Honorable Donald S. Voorhees, United States District Judge, Western District of Washington, sitting by designation.

the Bank of Irvine claimed that Woodbridge improperly terminated the lease, and Woodbridge's cross-claim alleged that the bank had breached the lease by abandoning the premises. That suit is pending in state superior court.

Subsequently, on May 18, 1984, the Superintendent of Banks for the State of California closed the Bank of Irvine and assumed control of its property and affairs pursuant to Cal.Fin.Code § 3100 (West Supp.1986). The Superintendent appointed the FDIC as receiver of the bank pursuant to Cal.Fin.Code § 3221 (West. 1968).

The FDIC, as receivor, entered into a purchase and assumption agreement with the Security Pacific State Bank ("Security Pacific"), under which Security Pacific purchased certain assets of the Bank of Irvine ("the bank") and assumed liabilities to various bank creditors, including depositors, trade creditors, and two other real property leases. Simultaneously, the FDIC as receiver sold the remaining assets of the bank (including the bank's claim against Woodbridge) to the FDIC for cash, which then was included in the assets purchased by Security Pacific. The agreement and the sale were approved by the Superintendent and the Superior Court of California. *See* Cal.Fin.Code §§ 3110.1, 3225.

Woodbridge's claim was not among the liabilities assumed by Security Pacific. Woodbridge asserts, and the FDIC does not here dispute, that because the proceeds of all assets purchased by the corporation were paid to Security Pacific, virtually no assets remain in the receivership from which Woodbridge's claim could be satisfied.

On December 28, 1984, Woodbridge brought this action in the Superior Court of California against the Bank of Irvine, the FDIC in its corporate insurer capacity, and the FDIC as receiver of the bank. It claimed that the FDIC improperly distributed the assets of the bank in violation of the California Financial Code. Woodbridge named the FDIC in its corporate capacity to ensure recovery of a judgment, because the receiver is only liable to the extent that there are assets in the receivership. The FDIC removed the action to the United States District Court pursuant to 12 U.S.C. § 1819, and moved to dismiss Woodbridge's claims against it.

The district court granted the motion. It found that the purchase and assumption agreement did not violate California law, and alternatively, that Woodbridge's claim was not yet ripe. After dismissing Woodbridge's claims against the Corporation, it remanded the remainder of the action to state court. Woodbridge then brought this appeal.

## DISCUSSION

California law authorizes its Superintendent of Banks to appoint the FDIC as receiver of FDIC-insured banks. Cal.Fin.Code §§ 3220, 3221. If the FDIC accepts the appointment, "the rights of depositors and other creditors of the insured bank shall be determined in accordance with ... the laws of this State." Cal.Fin.Code § 3222. Conversely, the FDIC is authorized to act as the receiver of insured banks where the appropriate state official tenders appointment in accordance with state law, 12 U.S.C. § 1821(e), and as receiver, the FDIC possesses the rights, powers and privileges granted by state law to such a receiver. *Id.*

Thus, we look to California state law in evaluating Woodbridge's claim. Woodbridge argues that California law requires equal treatment of all creditors of a closed state bank as well as pro rata distribution of the assets of the bank among its creditors. Woodbridge therefore argues that because California law requires equal treatment of creditors of an insolvent state bank, the FDIC acted unlawfully in failing to make any provision for Woodbridge's claim.

California Financial Code § 857 provides that "[n]o bank, bank officer, director, employee, or agent shall give a preference to any depositor or creditor except as expressly authorized by law." More specifically, in the section of the Financial Code dealing with closed state banks, the California statute provides that to the extent provided in

the purchase and assumption agreement, the purchasing bank succeeds to the rights and obligations of the selling bank (§ 3110.-1). The receiver is required to give notice to creditors to present their claims within four months (§ 3117); and, with court approval, the receiver is to pay pro rata dividends upon all approved claims out of funds remaining after payment of expenses and depositors' claims (§ 3119). If the bank is liquidated, the receiver must petition the court for an order declaring, *inter alia*, that all known liabilities "have been paid or adequately provided for ... so far as the bank's assets permitted" (§ 3126). These statutes manifest a strong underlying policy to give equal treatment to all creditors of a closed state bank, and to prohibit arbitrary distributions.

■ The receiver is authorized to "sell any part or the whole of the business of the bank to any other bank" with approval of the court and the Superintendent (§ 3110.1). The FDIC argues that this authorization validates the purchase and assumption agreement, including its ultimate exclusion of Woodbridge's claim. However, the FDIC gives no reasons why Woodbridge's claim was excluded. Section 3110.1 does not allow the receiver to pick and choose which creditors will have their claims assumed. Such an interpretation would seriously undermine the law and policy in the California provisions, particularly Cal.Fin.Code §§ 857 and 3119, which anticipate orderly and equitable treatment of all claims. Thus, the FDIC either should have required that Woodbridge be included in the purchase and assumption agreement with Security Pacific, or it should have retained sufficient assets in the receivership to cover its claim. We conclude that the FDIC violated California law by excluding Woodbridge's claim from any meaningful opportunity for recovery.

The FDIC emphasizes that Financial Code section 3110.1 authorizes a purchase and assumption agreement as to "part" of the bank's assets. The FDIC contends that the legislative history of that provision shows that the legislature intended to authorize a receiver to enter into arrangements which fail to make provision for all claims on a ratable basis. The legislative history does not, however, indicate any such purpose. The legislative counsel's digest of Assembly Bill 4086, for example, stated that the purpose of section 3110.1 was to authorize the superintendent "to sell all or part of the commercial banking or trust business of a bank ... and for the succession by operation of law of the deposits and fiduciary obligations of the seller to the buyer as provided in the terms of sale." This and other statements of legislative intent show only that the California legislature felt the need to authorize purchase and assumption agreements as to all or part of an insolvent bank's assets. They do not provide support for the FDIC's proposition that the legislature intended to create an exception to the prohibition against preferences, section 857, or to authorize the arbitrary exclusion of certain claims. It is clear that section 3110.1 permits the receiver to enter into a purchase and assumption agreement that only provides for sale of part of the insolvent bank's assets, but the statute does not suggest that if a claim is excluded from the agreement, it may be completely excluded from any recovery.

We have considered a similar situation involving a national bank in *First Empire Bank v. FDIC*, 572 F.2d 1361 (9th Cir.), *cert. denied*, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978). The receiver in *First Empire* argued that 12 U.S.C. § 1823(e) authorized it to implement purchase and assumption agreements upon reasonable terms and conditions. This court, however, in applying federal banking law, looked to sections of the Federal Banking Act which prohibited payments in preference of one creditor, 12 U.S.C. § 91, and which required ratable dividends to creditors whose claims were approved or adjudicated. 12 U.S.C. § 194. Based on these statutes, we concluded that the receiver could not enter into a purchase and assumption agreement that did not provide for the assumption of all creditors' claims. We made clear that if the purchase and assumption agreement had reserved sufficient assets in the receivership to allow distribution to unassumed

creditors, then the distribution would have been upheld. Because the FDIC had not done so, we required it to compensate the creditors whose claims were not assumed by the acquiring bank. 572 F.2d at 1371.

In *First Empire*, our conclusion that the FDIC was required to make ratable distribution of assets rested primarily upon the language of 12 U.S.C. § 194, which provided:

> From time to time, after full provision has been made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been provided to his satisfaction or adjudicated in a court of competent jurisdiction....

12 U.S.C. § 194. The California provision is substantially similar. It provides:

> At any time and from time to time after the expiration of the time fixed for the presentation of claims, the superintendent, after obtaining approval of the court, may declare and pay one or more dividends upon all approved claims out of the funds remaining in his hands after the payment of expenses and after setting aside an amount sufficient to pay all depositors, who have not yet filed claims but whose claims appear upon the books or records of the bank, their *pro rata share* of the funds then available for the payment of a dividend.

Cal.Fin.Code § 3119. In *First Empire*, we held that FDIC's obligation to make ratable distributions prohibited it from preferring some creditors over others without leaving sufficient assets in the receivership to allow distribution to unassumed creditors. 572 F.2d at 1371. Although *First Empire* involved interpretations of federal law, we find its reasoning persuasive, particularly because of the similarity of the relevant statutory provisions.

The FDIC challenges this suit as being an impermissible collateral attack upon the Superior Court order that approved the purchase and assumption agreement. However, court approval of the assumption agreement does not dispose of the issues here.

The court approval was a general grant of authority which permitted the FDIC receiver to transfer assets and liabilities pursuant to the purchase and assumption agreement and to sell other assets to the FDIC in its corporate capacity. Nowhere in the order did the court authorize the receiver arbitrarily to exclude liabilities or to act in contravention of California state law. The court granted the FDIC the approval necessary to proceed with the sale, but it did not endorse the disposition of specific claims. It was not presented with any issues concerning the validity of specific claims or the receiver's proposed handling of those claims. Indeed, if the receiver had chosen to include the Woodbridge claim in the agreement, the language of the court's order would have been unaffected.

■ The FDIC also insists that Woodbridge's claim is not ripe, because the existence and amount of the alleged liability of the Bank of Irvine to Woodbridge Plaza has not been established in state court. Yet, Woodbridge's claim was in existence before the bank went into receivership. Significantly, the bank's claim against Woodbridge was purchased as an asset, despite its contingent nature. The fact that Woodbridge's cross-claim against the bank has not been reduced to judgment should not affect the ripeness of Woodbridge's claim against the FDIC, at least for declaratory judgment purposes. *See FDIC v. United States National Bank*, 685 F.2d 270, 276 (9th Cir.1982).

The FDIC further contends that this suit must be dismissed because Woodbridge failed to invoke the procedures prerequisite to suit under the Federal Torts Claim Act (FTCA). According to the FDIC, the FTCA is the only applicable waiver of sovereign immunity and provides the exclusive remedy for Woodbridge's claim of violation of California banking statutes.

■ The "sue-and-be-sued" language of 12 U.S.C. § 1819 (Fourth) is a general waiver of sovereign immunity from claims

brought against the FDIC. *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 390–92 & n. 3, 59 S.Ct. 516, 518–19 & n. 3, 83 L.Ed. 784 (1939); *see also Federal Housing Administration v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940). The Supreme Court recently considered the scope of a "sue-and-be-sued" provision in *Franchise Tax Board v. United States Postal Service,* 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984). The Court concluded that the power to "sue and be sued" should be interpreted broadly. The Court noted that Congress intended the Postal Service to be run "more like a business than had its predecessor," and that Congress expressed this intent by making the service self-supporting. 467 U.S. at 519–20 & n. 13, 104 S.Ct. at 2553–54 & n. 13. Similarly, the FDIC, a commercial entity, is structured to be self-supporting; the FDIC's Permanent Insurance Fund is derived from premiums paid by insured banks and the income generated by those premiums. 12 U.S.C. §§ 1817(d), 1821. The argument that the FTCA is the only possible waiver of sovereign immunity for Woodbridge's claim is not consistent with *Franchise Tax Board.*

Even if the Supreme Court's decision in *Franchise Tax Board* does not control the result here, there is an alternative reason why the FDIC's position is not sound. In arguing that the FTCA should apply to this suit, the FDIC overlooks limitations of the Act which this court and others have recognized. The FTCA provides that the district court has exclusive jurisdiction of civil actions "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674. Thus, courts have held that the FTCA applies only if state law would impose liability on private persons under similar circumstances. *See Arnsberg v. United States,* 757 F.2d 971, 978–79 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986); *Arvanis v. Noslo Engineering Consultants, Inc.,* 739 F.2d 1287, 1290–92 (7th Cir.1984) (per curiam), *cert.*

*denied,* 469 U.S. 1191, 105 S.Ct. 964, 83 L.Ed.2d 969 (1985).

We deal here with the law of California. In California, only the state Superintendent of Banks or the FDIC, its appointee, can act as the receiver of a closed state bank. *See* Cal.Fin.Code §§ 3100, 3220. Thus, the FDIC's liability is not akin to that of a "private individual under like circumstances." 28 U.S.C. § 2674. This circuit, and others, have refused to extend liability under the FTCA to all violations of state law. *See Arnsberg,* 757 F.2d at 978 (law of citizens arrest is "an inappropriate instrument for determining FTCA liability" of federal law enforcement officials); *see also Caban v. United States,* 728 F.2d 68 (2d Cir.1984) (immigration officers have materially different duties than do private citizens, and therefore no FTCA liability exists, even if a private person could be liable for wrongfully detaining plaintiff); *Arvanis,* 739 F.2d at 1290–92 (FTCA action cannot be maintained in the absence of "persuasive analogy with private conduct").

Here, Woodbridge's claim against the FDIC is not reasonably analogous to any claim for which a private person would be liable in California. The FTCA therefore does not apply. Woodbridge's claim is that the FDIC did not abide by California state banking law pertaining to the duties of receivers. This is not a claim that sounds in tort. There is no "persuasive analogy with private conduct" as the Seventh Circuit has stated the requirement for invocation of FTCA remedies. *See Arvanis,* 739 F.2d at 1292.

We do not believe that the Seventh Circuit's reasoning in *FDIC v. Citizens Bank & Trust Co.,* 592 F.2d 364 (7th Cir.1979), *cert. denied,* 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979), conflicts with our decision in this case. In *Citizens Bank,* the FDIC successfully argued that the claims against it were tort claims expressly excluded from the purview of the FTCA pursuant to 28 U.S.C. § 2680(a). The court held that the FTCA withdrew the "sue-and-be-sued" liability of the FDIC with respect to claims both covered and excluded by the Act. *See also Safeway Portland E.F.C.U.*

*v. FDIC,* 506 F.2d 1213 (9th Cir.1974) (involving FDIC immunity from suit for intentional torts of deceit and misrepresentation excluded from the FTCA in 28 U.S.C. § 2680(h)). The FDIC has not cited to us any FTCA exclusion applicable to Woodbridge's claim in this case, which involves alleged violation of state banking statutes governing receivers. The Seventh Circuit in *Citizens Bank* did not describe the nature of the state law alleged to have been violated. We believe an expansive interpretation of *Citizens Bank's* immunity holding is unwarranted in light of the Supreme Court's subsequent decision in *Franchise Tax Board* and our own decision in *First Empire.*

We therefore conclude that this claim is not within the exclusive purview of the FTCA, and therefore, the "sue-and-be-sued" provision of 12 U.S.C. § 1819 (Fourth) provides the waiver of sovereign immunity supporting Woodbridge's claims against the FDIC.

█ We hold that California law does not permit a receiver arbitrarily to exclude creditors of a closed bank from the distribution of assets, and therefore we reverse the order of the district court.

Reversed and remanded.

FLETCHER, Circuit Judge, dissenting:

Because I think that the district court lacked subject matter jurisdiction in this case, I dissent.

Statutes conferring jurisdiction on federal courts are strictly construed, *Boelens v. Redman Homes, Inc.,* 748 F.2d 1058, 1067 (5th Cir.1984), and doubts are resolved against federal jurisdiction. *Id.; General Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 968–69 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). In determining whether a statute confers jurisdiction, we look to congressional intent. *See, e.g., Boelens,* 748 F.2d 1058 (scope of the Magnuson-Moss Warranty Act); *General Atomic,* 655

F.2d 968 (overall scheme of the Arbitration Act); *Phillips v. Osborne,* 403 F.2d 826 (9th Cir.1968) (purpose of Landrum-Griffin Act). Although neither party raised the issue of whether the district court lacked jurisdiction, we must consider the question *sua sponte. Shamrock Development Co. v. City of Concord,* 656 F.2d 1380, 1384 (9th Cir.1981).

Woodbridge Plaza brought suit against the FDIC in both its corporate capacity and its capacity as receiver. The same theory of law—breach of duty by the *FDIC–receiver* in improperly distributing assets— formed the foundation of both claims. The FDIC-corporation was added as a party simply to provide a source of assets upon recovery. That the FDIC acted in its corporate capacity in purchasing certain assets from the receiver was not material to the plaintiff's claim.[1] The district court dismissed Woodbridge's claim naming the FDIC-corporation as defendant on the merits[2] and remanded its claim naming the FDIC-receiver as defendant to state court on the ground that the court lacked subject matter jurisdiction over the FDIC-receiver.

Federal courts lack subject matter jurisdiction when the FDIC is sued in its capacity as receiver and the issues are determined pursuant to state law. *See, e.g., In re F & T Contractors, Inc.,* 718 F.2d 171, 177 (6th Cir.1983); *FDIC v. Sumner Financial Corp.,* 602 F.2d 670 (5th Cir.1979); *see also FDIC v. Elefant,* 790 F.2d 661 (7th Cir.1986); *FDIC v. de Jesus Velez,* 678 F.2d 371 (1st Cir.1982). 12 U.S.C. § 1819 (Fourth), which confers federal jurisdiction over the FDIC, provides:

[T]he Corporation shall ... have power ... To sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature ... to which the Corporation shall be a party shall be deemed to arise under the laws of the United States and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and

---

**1.** Woodbridge did not allege, for example, that the FDIC corporation was liable under a transferee liability theory.

**2.** The court thereby treated the claim as one against the FDIC-corporation.

the Corporation may, without bond or security, remove any such action ... from a State court to the United States district court..., except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders and such State bank under State law shall not be deemed to arise under the laws of the United States.

Thus, the jurisdictional section, like the Federal Deposit Insurance Act as a whole, distinguishes between the FDIC's functions. Courts have enforced the statutory vision of the FDIC's dual capacity by basing jurisdiction on the nature of the FDIC's role as presented by the claim. *See, e.g., FDIC v. de Jesus Velez,* 678 F.2d 371, 374 (1st Cir.1982); *FDIC v. Citizens Bank & Trust Co.,* 592 F.2d 364, 367 (7th Cir.), *cert. denied,* 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979); *FDIC v. Ashley,* 585 F.2d 157 (6th Cir.1978). A complaint alleging in part "that the F.D.I.C., as ... liquidating agent, had acted in an irresponsible manner and had conspired with and aided and abetted others ... in breaching the fiduciary duties owed the stockholders of the bank" raised a claim against the FDIC as receiver of a state bank, over which the federal court lacked jurisdiction. *Freeling v. Sebring,* 296 F.2d 244, 246 (10th Cir. 1961). By contrast, the FDIC acted as a corporation in asserting a claim against bank directors for corporate mismanagement when the FDIC purchased for value "unacceptable assets," and bore the risk of loss as to recovery on the assets, so that the federal court had jurisdiction. *Ashley,* 585 F.2d 157. These courts considered the nature of the claim rather than, as here, the name in which the FDIC is a party or the potential source of assets upon judg-

ment. In our case, because the claim involves the FDIC as receiver, federal jurisdiction is not conferred.

Although the legislative history of the Banking Act of 1935[3] is unenlightening because it does not address the jurisdictional section, *see* S.Rep. No. 1007, 74th Cong., 1st Sess. (1935); H.Rep. No. 742, 74th Cong., 1st Sess. (1935), the general scheme of the Federal Deposit Insurance Act indicates that Congress considered the two functions of the FDIC to be distinct. Different sections of the statute authorize the FDIC to act as receiver[4] or corporation.[5] *See FDIC v. de Jesus Velez,* 678 F.2d 371, 374 (1st Cir.1982).[6] In the Banking Act of 1935, Congress addressed the proper functioning of the FDIC as insurer; it was in this context that Congress conferred federal jurisdiction and excepted cases involving the FDIC as receiver. It therefore seems unlikely that Congress intended jurisdiction to be conferred in suits nominally against the FDIC in its corporate capacity but alleging a breach of duty by the receiver.

Woodbridge relies on *First Empire Bank v. FDIC,* 572 F.2d 1361 (9th Cir.), *cert. denied,* 439 U.S. 919, 99 S.Ct. 3032, 69 L.Ed.2d 406 (1978), in asserting that a claim against the FDIC-corporation for acts of the FDIC-receiver is appropriate. Because *First Empire* involved a claim against a national bank, however, the court never considered this jurisdictional issue. The court held the FDIC-corporation liable without determining that the claim, by its nature, was asserted against the FDIC in its corporate capacity.[7]

Nor do I think that Woodbridge may rely on an analysis based on the FDIC's status as defendant. Under 12 U.S.C. § 1819 (Fourth), federal jurisdiction is excepted if the rights of creditors are determined by state law. Suits in which the FDIC acts in

---

**3.** The Banking Act of 1935, ch. 614, 49 Stat. 684, 692 added the distinction between the FDIC's corporate capacity and its capacity as receiver.

**4.** *See* 12 U.S.C. § 1821(e).

**5.** *See, e.g.,* 12 U.S.C. § 1823(d), (e).

**6.** The caselaw recognizes that Congress intended that the FDIC may act in a dual capacity, even in the same transaction. *See, e.g., In re F & T*

*Contractors, Inc.,* 718 F.2d 171, 176–77 (6th Cir. 1983).

**7.** I need not determine whether the FDIC-corporation can be held liable for a breach of duty by the FDIC-receiver. It should be noted, however, that *First Empire* failed to analyze this issue in awarding judgment.

**546**

its capacity as receiver typically are said to invoke state law. 12 U.S.C. § 821(e). Suits in which the FDIC-receiver is a defendant, however, do involve questions of federal law. Notably, whether sovereign immunity bars suit against the FDIC is determined by reference to federal law. *See, e.g., Franchise Tax Board v. United States Postal Service,* 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984) (examining scope of "sue-and-be-sued" provision). I think, however, that Congress did not intend federal jurisdiction in all suits against the FDIC-receiver. As stated above, Congress construed an FDIC with two capacities and intended federal jurisdiction only when the FDIC acted in its corporate capacity. If it had intended otherwise, Congress could have drafted the statute to provide federal jurisdiction for all suits against the FDIC. Further, other circuits have barred suit against the FDIC-receiver in federal court. *FDIC v. La Rambla Shopping Center, Inc.,* 791 F.2d 215, 220–21 (1st Cir.1986) (dismissing counterclaim against FDIC-receiver); *In re F & T Contractors, Inc.,* 718 F.2d 171, 176–78 (6th Cir.1983) (same). I therefore conclude that 12 U.S.C. § 1819 (Fourth) did not confer jurisdiction on the district court to hear a claim against the FDIC-corporation that although nominally directed at the FDIC's corporate capacity is at its heart a claim against the FDIC-receiver.

In moving for removal to federal court, the FDIC claimed jurisdiction exclusively under 12 U.S.C. § 1819. The case law makes clear that there is no other basis for federal jurisdiction in cases involving the FDIC-receiver and raising issues of state law. 12 U.S.C. § 1819 precludes not only federal question jurisdiction, but diversity jurisdiction as well. *FDIC v. La Rambla Shopping Center, Inc.,* 791 F.2d 215, 220–21 (1st Cir.1986) and cases cited therein; *FDIC v. Elefant,* 790 F.2d 661, 665–66 (7th Cir.1986).

I therefore would remand to the district court with direction that it vacate that portion of its ruling that dealt with the merits and remand the balance of the case to state court.