263 So.2d 555 (1972)
RELIANCE INSURANCE CO.
v.
FIRST MISSISSIPPI NATIONAL BANK.
No. 46634.
Supreme Court of Mississippi.
June 12, 1972.
Rehearing Denied July 3, 1972.
*556 Cox & Dunn, Ltd., Jackson, for appellant.
Heidelberg, Sutherland & McKenzie, Hattiesburg, for appellee.
INZER, Justice:
This is an appeal by Reliance Insurance Company from a decree of the Chancery Court of Forrest County holding that the rights of appellee, First Mississippi National Bank, to the progress payments under an assignment from a contractor on a public contract were superior to the subrogation and assignment rights of the surety on a payment-performance bond.
The facts leading to this suit are that on February 15, 1967, Southern Slurry Seal, Inc., referred to as Contractor, entered into a contract with the City of Philadelphia, referred to as City, for the construction and installation of certain sanitary sewerage improvements. The contract price for the work to be done was $524,682.39, subject to additions and deletions for change orders made during the progress of the work. Simultaneously with the execution of the contract Reliance Insurance Company, referred to as Surety, executed as surety a performance-payment bond, conditioned among other things for the faithful performance of the contract and payment of materialmen and laborers.
The contractor made arrangements with First Mississippi National Bank, referred to as bank, to make loans from time to time in order to pay for material and labor to be used in the performance of the contract. Contractor agreed to secure the loans by the assignment of money due or to become due under the contract. Before making any loans, the bank requested approval of the assignment by the city, and on February 18, 1967, the city by letter from its mayor advised the bank that it was satisfactory with the city for the contractor to assign the contract as security. Later the city through its mayor advised the bank that any checks for progress payments *557 to the contractor would be made jointly to the contractor and the bank.
The contract provided that the city would make progress payments not later than the fifteenth day of each month for work performed during the preceding calendar month, but to insure the proper performance on the contract the city would retain ten percent of each estimate until final completion and acceptance of all work covered by the contract. The contractor entered into the performance of the contract and received thirteen progress payments. On May 13, 1968, the contractor notified the city and the surety that it was unable to meet its bills and complete the project. At that time the contract had been substantially completed, but certain clean-up and finishing work was required to complete the contract. The surety took over the work and completed the contract project at a total cost of $9,102.08. In addition, the surety paid claims for materials used on the contract in the amount of $98,979.92.
At the time of default the value of the pay items of work performed by the contractor from April 1, 1968, the date of the last progress report, to the date of default was $14,918.47. At the time of default the contractor was indebted to the bank in the sum of $27,000, for money furnished to pay materialmen and laborers on the project. After exhausting its security covered by a chattel deed of trust, the contractor was indebted to the bank in the sum of $22,365.55.
At the time of default the city had in its hands $50,107.11 that it had retained from progress payments. When this amount was added to the pay items performed prior to default it amounted to $65,025.58. The bank contended by virtue of its assignment that the city should pay it (bank) the total amount due it (bank) by the contractor. The surety claimed it was entitled to all the funds by right of equitable subrogation and by virtue of an assignment made to it by the contractor in the application for the bond. In spite of these conflicting claims, the city agreed to and did pay the balance due on the contract to the surety, upon the surety executing and delivering to the city a bond conditioned that the surety would indemnify and save harmless the city from any claims or actions against the city by the bank, including all costs, expenses and attorney's fee.
Thereafter the bank filed suit against the surety alleging that by virtue of its assignment it was entitled to recover from the surety the full amount of the debt due it by the contractor. The bank alleged that the surety had become unjustly enriched at the expense of the bank, that by operation of law a constructive trust arose, and that the surety was holding, as trustee for the benefit of the bank, that portion of the funds required to satisfy the bank's claim.
The surety answered and denied that it held any part of the funds paid to it by the city as trustee and denied that the bank had the right to bring this action against it. Surety also alleged that the assignment to the bank was not valid because the city had not approved and consented to the assignment by an order on its minutes. The surety also alleged that it was entitled to the funds by virtue of its right to equitable subrogation, by virtue of an assignment to it by the contractor and for other reasons.
In the trial of this case the parties entered into stipulation as to the facts, and the trial court adjudicated that the assignment in favor of the bank was paramount and superior to the rights and interest of the surety to the extent of the value of the pay items for work performed by the contractor prior to default, but that the assignment to the bank was subordinate to the rights of the surety insofar as the ten percent retainage fund was concerned. The court found that a constructive trust arose in favor of the bank to the extent of $14,918.47 of the funds paid by the city to the surety. The decree awarded the bank a judgment against the surety for $14,918.47, plus interest.
*558 Surety assigns numerous grounds for reversal of this case, but we will only discuss those grounds which we deem merit discussion. It was contended in the trial court and contended here that the bank had no right to maintain this suit against the surety because the bank's right of action, if any, was against the city. We find no merit in this contention. The record in this case reflects that after the contractor defaulted, the bank served notice on the city that by virtue of its assignment from the contractor, it was claiming the funds in the hands of the city to the extent of the contractor's debt to it. The Bureau of Internal Revenue also served the city with notice of its claim for unpaid payroll and other taxes. Of course, the surety was also claiming all the funds in the hands of the city. There was no controversy as to the balance due under the contract, and the city was at this point a mere stakeholder of the funds. Instead of filing a bill of interpleader and paying the money into the court, as is usually done under similar circumstances, the city agreed with the surety that it would pay the funds over to the surety upon the surety executing an indemnity bond to save the city harmless from any claim of the bank or the Bureau of Internal Revenue and to defend any suit filed by any claimant. Of course, the bank could have proceeded against the city, but that proceeding was not its only remedy. The bank had the right to proceed against the party ultimately liable for the payment of its claim, when established. We are of the opinion that the trial court was correct in holding that under the circumstances of this case, the surety held the funds as trustee insofar as the claim of the bank was concerned. The surety does not contend that the chancery court did not have jurisdiction to settle the priority of claims between it and the bank. In fact, it relies upon the doctrine of equitable subrogation. Neither does it contend that the city was a necessary party to this proceeding. In reality the surety by its action became the stakeholder of the funds instead of the city.
The surety contends that the trial court was in error in failing to hold that the assignment from the contractor to the bank was invalid. The basis of this contention is that no consent by the city to the assignment appears upon the city's minutes. The city recognized the assignment by making thirteen progress payments jointly to the contractor and the bank and never at any time questioned the validity of the assignment. The bank, relying upon the acceptance by the city, continued to furnish funds to the contractor, all of which were used by the contractor to pay for labor and materials in performance of the contract. We are of the opinion that under the facts and circumstances of this case, the trial court was correct in holding that insofar as the surety is concerned, the assignment was valid and the surety was not in a position to question its validity.
The real question in this case is whether the subrogation rights of the surety were superior to the rights of the bank under its assignment. We are of the opinion that insofar as the rights of an assignee of a public construction contract and those of a surety are concerned, the question is well settled by former decisions of this Court. In First National Bank of Aberdeen v. Monroe County, 131 Miss. 828, 95 So. 726 (1923), we held that the surety did not have a superior right or equity to progress payments due under a public contract over an assignment held by a bank who had advanced funds used by the contractor in paying for materials and labor in performance of the contract.
In Canton Exchange Bank v. Yazoo County, 144 Miss. 579, 109 So. 1 (1926), we held that the doctrine of equitable subrogation applied to the bond at its inception and that the surety had a paramount right to the retainage fund over an assignment to the bank of these funds. However, we specifically limited the right of subrogation to the retainage fund by saying:
We want it understood that the conclusion here announced applies only to *559 the "retainage" fund, and we adhere to the rule announced in the case of First National Bank v. Monroe County, supra, as to the progress fund there involved, which has no application to the "retainage" fund or retained percentage. (144 Miss. at 613, 109 So. at 8).
We reaffirmed these decisions in Southern Surety Co. v. Greenville Bank & Trust Co., 154 Miss. 412, 122 So. 529 (1929). Since that time we have continued to adhere to the rule announced in these cases in spite of forceful arguments that these decisions are contrary to the great weight of authority in this country. Surety again strenuously urges this contention and cites numerous decisions from other jurisdictions to support its argument. We have carefully considered appellant's argument in this regard and are of the opinion that the former decisions of this Court are dispositive of the issue relative to the pay items performed by the contractor prior to default. Whatever may be the relative merits of the two lines of authority, we are of the opinion that the rule announced by the decisions of this Court is a good rule, and we see no compelling reason to overturn the settled law of this state. The fact that the surety completed the contract in this case does not alter the rule. However, we are of the opinion that the trial court was in error in not subtracting from the amount of the pay items ten percent as retainage. The contract provided that any progress payments to the contractor would be reduced by the ten percent retainage. The contract was not completed at the time of the default by the contractor, and the ten percent retainage should have been deducted from the pay items performed by the contractor prior to default. Appellant also urges that the pay items should be reduced by $5,000 because of advances made by the city to the contractor prior to the thirteenth progress payment. However, it is apparent that the city was relying on the retainage fund for the collection of this advancement for materials and street repairs, since it gave the contractor credit on the progress payment for the materials that had been furnished. The city did not attempt to collect this amount from the progress payments, and when the surety paid the city $5,000 from the funds paid to it by the city, the amount was not designated by the city as a charge against any particular fund. Under these circumstances we are of the opinion that the chancellor was not in error in holding that the surety was not entitled to have the pay items reduced by this amount.
It is also urged by the surety that it was entitled to all the funds in the hands of the city at the time of default because the city had the right to apply such proceeds to the payment of materials suppliers by the terms of Item 25 (D) of the general contract. This provision is as follows:
The Contractor shall, at the Owner's request, furnish satisfactory evidence that all obligations of the nature hereinabove designated have been paid, discharged, or waived. If the Contractor fails so to do, then the Owner may, after having served written notice on the said Contractor, either pay unpaid bills, of which the Owner has written notice, direct, or withhold from the Contractor's unpaid compensation a sum of money deemed reasonably sufficient to pay any and all such lawful claims until satisfactory evidence is furnished that all liabilities have been fully discharged whereupon payment to the Contractor shall be resumed, in accordance with the terms of this contract, but in no event shall the provisions of this sentence be construed to impose any obligations upon the Owner to either the Contractor or his surety. In paying any unpaid bills of the Contractor, the Owner shall be deemed the agent of the Contractor, and any payment so made by the Owner, shall be considered as a payment made under the contract by the Owner to the Contractor and the Owner *560 shall not be liable to the Contractor for any such payment made in good faith.
This provision, as we construe it, gave the city the right, if it saw fit, to either pay unpaid bills of the contractor or withhold from the contractor's unpaid compensation a sum of money sufficient to pay any and all such claims. However, the city before exercising either of these options was required to serve the contractor with written notice. The provision expressly provides that in no event shall such provision impose any obligation upon the city to either the contractor or the surety. The city did not at any time choose to exercise either of these options given it under the provisions of the contract. We are unable to see how the surety can now take advantage of and claim the benefit of the provision of the contract that the city did not choose to exercise. The city was not required to exercise this provision and in fact never saw fit to exercise it. By failing to exercise the provision, the city waived its right under this provision. The city having waived its rights under this provision, the surety cannot now avail itself of any rights given the city under this provision of the contract.
For the reasons stated the decree of the chancery court will be modified as to reduce the amount of the judgment by ten percent which should have been deducted as retainage by the trial court, thus reducing the amount of the judgment recited in the decree to $13,426.62. Likewise, the interest awarded shall be reduced by ten percent, thus reducing the interest awarded to $1,711.89. In all other respects the decree as modified will be affirmed. The cost will be divided so as to tax appellant with ninety percent (90%) of the cost and the appellee with ten percent (10%).
Affirmed, as modified.
RODGERS, P.J., and BRADY, ROBERTSON and SUGG, JJ., concur.