UNITED STATES of America, For the Use of GOLD BOND BUILDING PRODUCTS, A DIVISION OF NATIONAL GYPSUM COMPANY, Plaintiff-Appellant,

v.

BLAKE CONSTRUCTION CO., INC., et al., Defendants-Appellees.

No. 86–3578.

United States Court of Appeals, Fifth Circuit.

June 26, 1987.

Harvey C. Koch, Gary J. Rouse, New Orleans, La., for plaintiff-appellant.

H. Bruce Shreves, Simon, Peragine, Smith & Redfearn, New Orleans, La., for defendants-appellees.

Before JOLLY, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Under the Miller Act, 40 U.S.C. §§ 270a–270d, a prime contractor on a federal construction project involving over $25,000.00 must post a payment bond to protect those who have a direct contractual relationship with either the prime contractor or a subcontractor. But the Miller Act does not protect those more remote, such as sales from A to B to C where C is a subcontractor and A is the claimant. *See J.W. Bateson Co. v. United States ex rel. Board of Trustees*, 434 U.S. 586, 594, 98 S.Ct. 873, 877, 55 L.Ed.2d 50 (1978). Gold Bond Building Products, a division of National Gypsum Co., appeals from an adverse judg-

ment, seeking payment under Blake Construction Co.'s Miller Act bond for materials supplied to Mt. Hawley Specialty Co., a subsidiary of Interior Construction Systems, Inc. Gold Bond concedes that Mt. Hawley was not a subcontractor of Blake Construction, but argues that Gold Bond had a direct contractual relationship with Interior Construction, which was a subcontractor. Blake also seeks recovery from Great American Insurance Co. under the subcontractor's labor and material bond issued to Interior Construction. We are persuaded that the district court properly denied Gold Bond's claims and affirm.

## I

Blake Construction Co. contracted with the United States to build an annex to the VA hospital in New Orleans. As required by the construction contract and the Miller Act, 40 U.S.C. § 270a, Blake supplied a performance and payment bond in favor of the United States with Aetna Casualty and Surety Co. as the surety.

Blake entered into a subcontract with Interior Construction Systems, Inc., to perform a portion of the work on the annex. As required by that subcontract, Interior Construction supplied a conventional materialman payment bond to Blake with Great American Insurance Company as the surety. Gold Bond later sold building materials to Mt. Hawley Specialty Supply Co., which in turn sold these materials at a loss to Interior Construction. Aware of Mt. Hawley and Interior Construction's relationship at the time of contracting, Gold Bond required a guarantee from Interior Construction of payment of the bill for the materials sold to Mt. Hawley. Gold Bond then shipped the materials directly to the job site, where Interior Construction incorporated the materials in the annex without Mt. Hawley ever taking possession.

When Gold Bond did not receive payment for the materials, it sued Blake, Aetna, Mt. Hawley and Great American for the monies owed to it.[1] Gold Bond argued that, in substance, it sold building materials directly to Interior Construction and therefore

Gold Bond is covered by both the Miller Act bond and Great American's conventional bond. The district court granted summary judgment in favor of Great American because Gold Bond did not have a "direct contract with [Interior Construction] for labor, material or both," as required for coverage under the conventional bond.

The remaining parties agreed to submit the case on the record to the district court for a decision on the merits. The district court found that there was "a legitimate sale of building materials from Mt. Hawley to Interior [Construction]," and that Mt. Hawley and Interior Construction were distinct entities. The district court also concluded that the guaranty agreement between Gold Bond and Interior Construction was not the kind of "direct contractual relationship" with Interior Construction entitling Gold Bond to coverage under the Miller Act. Gold Bond appeals both the grant of summary judgment for Great American and the entry of judgment for Blake and Aetna.

## II

### –A–

Gold Bond argues that it is entitled to recover under Blake's Miller Act bond for the materials it sold to Mt. Hawley. The Miller Act requires a contractor on a federal construction project for more than $25,000.00 to post a payment bond to protect persons "who [have] furnished labor or material in the prosecution of the work provided for in such contract." 40 U.S.C. § 270b(a). In *Clifford F. MacEvoy Co. v. United States ex. rel. Calvin Tomkins Co.*, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944), the Supreme Court explained that

the right to bring suit on a [Miller Act] payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and subcontractors who, lacking express or implied contractual relationship with the prime contractor, have direct contrac-

---

1. Interior Construction was not sued because it had filed a voluntary bankruptcy petition. Mt. Hawley is no longer a party because a default judgment has been entered against it in favor of Gold Bond.

tual relationship with a subcontractor.... To allow those in more remote relationships to recover on the bond would be contrary to the clear language of the proviso and to the expressed will of the framers of the act.

*Id.* at 107–08 (footnote omitted).

■ Gold Bond supplied materials to Mt. Hawley, which in turn supplied materials to Interior Construction, the subcontractor. The district court thus concluded that Gold Bond "was simply 'a supplier,' and as such, is not entitled to coverage under Blake's Miller Act payment bond."

Under the Miller Act, the relationship among Gold Bond, Mt. Hawley and Interior Construction must be decided by federal law. *See United States ex rel. General Electric Supply Co. v. Wiring, Inc.,* 646 F.2d 1037, 1042 (5th Cir.1981); *see also United States ex rel. Woodington Electric Co. v. United Pacific Insurance Co.,* 545 F.2d 1381, 1382 (4th Cir.1976) (whether prime contractor's relationship with other company was as contractor-subcontractor or as joint venturers is matter of federal law). Gold Bond argues that it was a supplier to another supplier in form only; it argues that the relationship between Mt. Hawley and Interior Construction warrants treating Gold Bond as a supplier of Interior Construction. Gold Bond notes that the undisputed record shows that: (1) Mt. Hawley is a subsidiary of Interior Construction; (2) Mt. Hawley sold materials to Interior Construction at a loss; and (3) the materials were shipped directly to Interior Construction. Moreover, Gold Bond notes that the same person in fact controls both Interior Construction and Mt. Hawley. In short, Gold Bond argues that in the context of these close corporations, the district court erred in finding that the sale from Mt. Hawley to Interior Construction was not a sham.

We can overturn the district court's conclusion only if it is clearly erroneous under Fed.R.Civ.P. 52(a). *United States ex rel. Light & Power Utilities Corp. v. L.B. Samford, Inc.,* 423 F.2d 1028, 1029 (5th Cir.1970). We are persuaded that there was ample support in the record for the findings that Mt. Hawley and Interior Construction are separate entities and that the sale of building materials from Mt. Hawley to Interior Construction is legitimate. Indeed, the affidavits of Kenneth Blackburn, president of Interior Construction, and Jeffrey Goranson, president of Mt. Hawley, showed that Interior Construction did not directly manage Mt. Hawley, that the corporations maintained separate bank accounts, insurance policies, operating addresses and payrolls, and that Mt. Hawley procured its own business and owned its own equipment.

Gold Bond, relying on *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), maintains that regardless of the corporate structures of Interior Construction and Mt. Hawley, they should be considered one entity for purposes of this transaction because they had a "special, integral, and symbiotic" relationship.

In *Rich,* the general contractor, Rich, had two contracts with Cerpac, a company with which Rich had closely related management and financial structures. Cerpac agreed in one of the contracts to supply plywood for Rich's construction projects and in the other to install custom millwork in those projects. Industrial, a wood products broker, sold plywood to Cerpac who in turn supplied Rich under the contract. After Cerpac's default on the purchase price, Industrial made a claim against Rich's Miller Act bond.

The Supreme Court concluded that Cerpac was a subcontractor for the purposes of Miller Act coverage. The Court held that "it was the substantiality and importance of [the] relationship with the prime contractor" that was determinative of whether an entity was a subcontractor under the Act. *Id.* at 123, 94 S.Ct. at 2162. Examining the "total relationship" between Cerpac and Rich, the Court found that Cerpac, by agreeing to do the millwork as well as supply plywood, had in effect taken over a substantial part of the prime contract. *Id.* at 124, 94 S.Ct. at 2162. In addition, because of Cerpac's "special, integral, almost symbiotic relationship [with Rich]," it would have been easy for Rich to protect itself from a default by Cerpac. *Id.*

Gold Bond argues that the "symbiotic relationship" test should be used to determine whether Mt. Hawley and Interior Construction are a single entity. However, the Supreme Court in *Rich* was not concerned with whether Rich and Cerpac should be viewed as a single entity. Rather, the Court in *Rich* was concerned with whether Cerpac was a subcontractor of Rich under the Act. If Cerpac was, Industrial had a contract with a subcontractor and was therefore a proper claimant on the bond. Because Cerpac had taken over a significant part of Rich's responsibilities by agreeing to perform millwork, it was truly operating as a subcontractor. The "symbiotic relationship" between Rich and Cerpac was important only because it demonstrated that Rich, the prime contractor, could protect itself against Cerpac's default just as it could with its other subcontractors.

In the present case, Gold Bond is not alleging a symbiotic relationship between the prime contractor, Blake, and Interior Construction. It is undisputed that Interior Construction *was* a subcontractor. Instead, Gold Bond argues that Interior Construction and Mt. Hawley had a symbiotic relationship. This argument misconceives the Court's purpose in *Rich*. Indeed, the Court implicitly held that Cerpac and Rich were distinct entities in spite of the symbiotic relationship. Accordingly, Gold Bond's attempt to apply the *Rich* Court's "symbiotic relationship" language to the question before us is unpersuasive.

We recognize that the Miller Act "is entitled to a liberal construction," *MacEvoy Co.*, 322 U.S. at 107, 64 S.Ct. at 893, "[b]ut such a salutory policy does not justify ignoring plain words of limitation and imposing wholesale liability on payment bonds," *id.* Moreover, in a risk-allocation scheme certainty is essential. Gold Bond could have structured the transaction to be certain that it was covered by Blake Construction's bond. We would disserve the Miller Act were we to ignore the sale from Mt. Hawley to Interior Construction.

## –B–

Gold Bond contends that it had a direct contractual relationship with Interior Construction under 40 U.S.C. § 270b(a) because of its guaranty agreement with Interior Construction. Gold Bond notes that the agreement allowed direct action against Interior Construction upon Mt. Hawley's default without first proceeding against Mt. Hawley.

■ On its face, the Miller Act provides a right of action only for those who have a contract to furnish labor or material to the contractor or subcontractor; it does not provide a right of action for those who have a guaranty agreement with the contractor or subcontractor. 40 U.S.C. § 270b(a).

Furthermore, Gold Bond cites no case holding that a guaranty agreement is the type of direct contractual relationship necessary to qualify for Miller Act coverage. The case upon which it relies, *Fluor Corp. v. United States ex rel. Mosher Steel Co.*, 405 F.2d. 823 (9th Cir.), *cert. denied*, 394 U.S. 1014, 89 S.Ct. 1632, 23 L.Ed.2d 40 (1969), implies the opposite. In *Fluor*, the district court found that the subcontractor had directly obligated himself to the claimant on the bond and was not merely a guarantor. Based on this finding, the Ninth Circuit rejected the bond company's contention that the claimant did not have the requisite "direct contractual relationship" with the subcontractor. *Id.* at 829. This holding implies that if the subcontractor had merely guaranteed payment to the claimant as Interior Construction did here, the claimant would not have the direct contractual relationship required for Miller Act coverage. We are persuaded that the guaranty agreement between Gold Bond and Interior Construction is not a contract to furnish material or labor under the Miller Act.

## III

Gold Bond argues that the district court erred in granting summary judgment for Great American, Interior Construction's surety on the conventional payment bond. According to the terms of the bond, Great American is liable as surety to those "hav-

ing a direct contract with the principal for labor, material or both, used or reasonably required for use in the performance of the contract." The district court found that there was no genuine fact issue whether Gold Bond had a "direct contract with [Interior Construction] for labor materials or both," and therefore Gold Bond was not a proper claimant on the conventional surety bond.

As we have explained, the district court's holding that Mt. Hawley's sale to Interior Construction was not a sham is not clearly erroneous; and the guaranty agreement between Interior Construction and Gold Bond is not a contract for labor or material under the Miller Act. Accordingly, Gold Bond did not have a direct contract with Interior Construction for labor or material under Great American's payment bond either. The district court properly entered summary judgment in favor of Great American.

AFFIRMED.