**UNITED STATES of America, Plaintiff,**

v.

**TAC CONSTRUCTION COMPANY, INC., et al., Defendants.**

**Civ. A. No. S89–0859(G).**

United States District Court, S.D. Mississippi, S.D.

Jan. 30, 1991.

David W. Case, Luther S. Ott, Ott & Purdy, Jackson, Miss., for Easley & Easley Millwork, Inc.

H.M. Yoste, Jr., Page, Mannino & Peresich, Biloxi, Miss., for Saucier Bros. Roofing, Inc.

John C. Wheeless, Jr., Wheeless, Beanland, Shappley & Bailess, Vicksburg, Miss., for First Nat. Bank of Vicksburg.

Stanford E. Morse, Jr., White & Morse, Gulfport, Miss., for Ray C. Weaver Mechanical Contractors, Inc.

Dorian E. Turner, Brunini, Grantham, Crower, & Hewes, Jackson, Miss., for Major Industries, Inc.

Kevin J. Necaise, Gulfport, Miss., for Coast Lumber and Bldg. Supply, Inc.

John L. Low, IV, Jackson, Miss., for Ace Blinds, Inc.

Mark F. McIntosh, Thomas, Price, Alston, Jones & Davis, Jackson, Miss., for Landis & Gyr Powers, Inc.

Rufus Alldredge, Jr., Franke, Rainey & Salloum, Gulfport, Miss., for Deposit Guar. Nat. Bank.

Robert S. Graham, T.E. Davidson, Jackson, Miss., for Professional Service Industries, Inc.

Sanford R. Steckler, Biloxi, Miss., for Seasons Nursery.

Alfred R. Koenenn, Gulfport, Miss., for Harold Elrod d/b/a Elrod Const. Co.

Phil B. Abernethy, Jackson, Miss., for Engle, Inc.

Dwight A. Dahmes, New Orleans, La., for Atlas–Edco, Inc.

John H. Henley and Ross E. Henley, Jackson, Miss., for Simplex Time Recorder Co.

Russell S. Gill, Biloxi, Miss., for Cochran Plastering Co.

Robert C. Galloway, James B. Galloway, Gulfport, Miss., for St. Paul Fire & Marine.

William H. Petty Jr., Dukes, Dukes, Keating & Faneca, Gulfport, Miss. for Bruces El.

Doyle L. Coats, Hester & Coats, Gulfport, Miss., for TAC Const. Co., Inc.

Andrew J. Kilpatrick, Jr., Reynolds & Kilpatrick, Jackson, Miss., for Williams Equipment & Supply Co.

David W. Mockbee, Mary Elizabeth Hall, Jackson, Miss., for Binswanger Glass Co., intervenor.

Neville H. Boschert, Paul W. Crutcher, Jackson, Miss., for Thrasher Co.

## MEMORANDUM OPINION

GEX, District Judge.

This cause comes before the Court on the motion of the defendant/claimant, Bin-

swanger Glass Company [Binswanger], for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The remaining claimants filed joinders in Binswanger's motion or filed their own motions for judgment on the pleadings. Because the claimants submitted exhibits which are beyond the pleadings, the Court will consider their motions as motions for summary judgment. The United States has moved to dismiss the counterclaim of the defendant, Engle, Inc., [Engle] pursuant to Rules 12(b)(1), 12(b)(6), and 12(h)(3) of the Federal Rules of Civil Procedure. The Court has duly considered the record in this action, in addition to the briefs of counsel, and being fully advised in the premises, concludes as follows:

### Standard of Review

Upon consideration of the United State's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court must construe the counterclaimant's complaint in the light most favorable to the counterclaimant, and the allegations must be accepted as true. *Radovich v. National Football League*, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957); *Reeves v. City of Jackson*, 532 F.2d 491, 493 (5th Cir.1976). The motion may not be granted unless it is apparent that the counterclaimant would not be entitled to recover under any state of facts which could be proven in support of its claims.

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in the light most favorable to the nonmoving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir.1984). The Supreme Court has discussed and clarified the relevant standard for summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Furthermore, speculative evidence, lacking a reasonable basis in fact, is insufficient to enable the nonmoving party to avoid summary judgment. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986). Hence, "[t]he mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* The Fifth Circuit has determined that:

> An issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

> \* \* \* \* \* \*

Thus, as the Supreme Court recently said in *Anderson v. Liberty Lobby, Inc.*, affirming a summary judgment rendered by a trial court: "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine factual issues that can be resolved only

by a finder of fact because they may reasonably be resolved in favor of either party."

*Id.* at 223.

"With regard to 'materiality,' only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation,* 812 F.2d 265, 272 (5th Cir.1987).

Applying the summary judgment standard to the evidence presented by the parties to this motion, the Court makes the following findings.

### Statement of Facts

On December 28, 1989, the United States filed the instant action pursuant to 28 U.S.C. §§ 1335, 1345, and 2361 by interpleading into the registry of the Court the sum of $168,035.40. This sum was a portion of the unpaid contract balance under a contract between TAC Construction Company, Inc. (TAC) and the United States Department of Navy for the construction of the Commander, Naval Oceanographic Command Administration Facility (the project) at the John C. Stennis Space Center [1] in Bay St. Louis, Mississippi.

The United States interpled the amount of $168,035.40 after deducting from the unpaid contract proceeds the amount of $12,000 for work allegedly uncompleted and the amount of $16,870.01 to satisfy two federal tax liens. Subsequently, the United States paid the $12,000 into the registry of the Court which it had originally withheld. Binswanger, an unpaid subcontractor, intervened and asserted a claim for $76,477 as its unpaid contract balance against the interpled funds and asserted a cross-claim against TAC and the sureties on the payment bond, Sam L. Bass, Jr., and John L. Bass. Likewise, all of the subcontractors and suppliers intervened, filed answers, cross-claims, and motions. Numer-

ous other subcontractors and suppliers on the project have also asserted their equitable interests in the unpaid contract balance.

First National Bank of Vicksburg (First National) was the assignee of the contract between TAC and the United States. Pursuant to that assignment, First National claims $88,666.13 plus interest.[2] TAC also executed security agreements granting Deposit Guaranty National Bank (DGNB) a security interest in all of TAC's accounts, contract rights, and chattel paper.

Virtually all parties have filed motions for judgment on the pleadings or for summary judgment. The Court's ruling on these motions will have the effect of deciding the rights of all parties to the fund due to the nature of this action even if a particular party has not filed a motion.

### Conclusions of Law

I. *The Interpled Funds*

A. The Contractor—TAC

■ TAC's claim against the interpled funds cannot be superior to the subcontractors and suppliers because it has not paid them. In *Pearlman v. Reliance Insurance Company,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), the court noted that "the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the [contract retainage] fund...." *Pearlman,* 371 U.S. at 141, 83 S.Ct. at 237. Furthermore, TAC assigned all of its interest in the contract proceeds to First National and assigned all of its accounts and contract rights to DGNB. Thus, TAC's claim against the fund is lower in priority than the assignee banks and the subcontractors.

B. The Sureties—Sam and John Bass

■ The sureties have yet to pay any of the claims of the subcontractors. In *United States Fidelity & Guaranty Co. v.*

---

1. It was originally known as the National Space Technology Laboratories. This explains why the invoices of the subcontractors and suppliers contain the initials "NSTL" as the destination or work location.

2. This was the amount as of February 16, 1990.

*United States*, 475 F.2d 1377, 201 Ct.Cl. 1 (1973), the court held:

In *North Denver Bank v. United States*, 432 F.2d 466, 193 Ct.Cl. 225 (1970), this court followed the rule laid down in *American Sur. Co. v. Westinghouse Elec. Mfg. Co.*, 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105 (1935), in which it was held that the surety was required to show that it had fully paid the claims of the laborers and materialmen arising out of the contract before it could share in the unexpended sums retained under the contract. *See also, National Union Fire Ins. Co. v. United States*, 304 F.2d 465, 157 Ct.Cl. 696 (1962).

*United States Fidelity & Guaranty Co.*, 475 F.2d at 1381. Therefore, the sureties do not have any right to the interpled funds.

### C. The Assignee Banks—First National and DGNB

 First National claims that its interest in the funds has priority over everyone else's claim because TAC assigned to First National its interest in the contract to cover loans made to TAC on the construction project. DGNB's claim arises from the security instrument executed by TAC granting DGNB a security interest in all of TAC's contract rights.

In *Active Fire Sprinkler Corp. v. United States Postal Service*, 811 F.2d 747 (2d Cir.1987), the court pointed out that:

it is elementary that an assignee generally takes a right subject to any claims superior to that right. *See Restatement (Second) of Contracts* § 343 (1979); *id.* comment b; 4 *Corbin on Contracts* § 900, at 608 (1951); *id.* § 901, at 610. Thus, the Sureties had no better right in the unpaid balance based on the assignment than did Brady, the insolvent general contractor that failed to pay Active.

*Active Fire Sprinkler Corp.*, 811 F.2d at 755. As to the effect of an assignment, the Mississippi Supreme Court has stated that "[i]t is elementary that the assignee obtains no greater right in the thing assigned than was possessed by the assignor...." *Canton Exchange Bank v. Yazoo County*, 144 Miss. 579, 109 So. 1 (1926). Conse-

quently, the banks only have the right TAC had to the retainage fund which is not superior to the subcontractors' rights.

### D. The Subcontractors and Suppliers

In the ordinary case, a court is not confronted with a priority dispute involving the subcontractors because the surety usually pays the subcontractors' claims pursuant to the payment bond. However, in this case, the surety did not pay any of the subcontractors or suppliers and the Court is faced with their contention that their claims have priority.

Several United States Supreme Court cases involving the rights of sureties bear discussion. In *Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), the court reviewed two of its previous decisions in determining the priority of a surety's claim. The *Pearlman* Court stated:

It seems rather plain that at least two prior decisions of this Court have held that there is a security interest in a withheld fund like this to which the surety is subrogated.... Those two cases are *Prairie State Bank v. United States*, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896), and *Henningsen v. United States Fid. & Guar. Co.*, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908).

In the *Prairie Bank* case a surety who had been compelled to complete a government contract upon the contractor's default in performance claimed that he was entitled to be reimbursed for his expenditure out of a fund that arose from the Government's retention of 10% of the estimated value of the work done under the terms of the contract between the original contractor and the Government. * * * The Prairie Bank, contesting the surety's claim, asserted that it had a superior equitable lien arising from moneys advanced by the bank to the contractor before the surety began to complete the work. The Court, in a well-reasoned opinion by Mr. Justice White, held that this fund materially tended to protect the surety, that its creation raised an equity in the surety's favor,

that the United States was entitled to protect itself out of the fund, and that the surety, by asserting the right of subrogation, could protect itself by resort to the same securities and same remedies which had been available to the United States for its protection against the contractor. The Court then went on to quote with obvious approval this statement from a state case:

> "The law upon this subject seems to be, the reserved per cent. [sic] to be withheld until the completion of the work to be done is as much for the indemnity of him who may be a guarantor of the performance of the contract as for him for whom it is to be performed. And there is great justness in the rule adopted. Equitably, therefore, the sureties in such cases are entitled to have the sum agreed upon held as a fund out of which they may be indemnified, and, if the principal releases it without their consent, it discharges them from their undertaking." 164 U.S. at 239, 17 S.Ct. at 147, quoting from *Finney v. Condon*, 86 Ill. 78, 81 (1877).

The *Prairie Bank* case thus followed an already established doctrine that a surety who completes a contract has an "equitable right" to indemnification out of a retained fund such as the one claimed by the surety in the present case. The only difference in the two cases is that here the surety incurred his losses by paying debts for the contractor rather than by finishing the contract.

The *Henningsen* case, decided 12 years later in 1908, carried the *Prairie Bank* case still closer to ours. Henningsen had contracts with the United States to construct public buildings. His surety stipulated not only that the contractor would perform and construct the buildings, but also, as stated by the Court, that he would "pay promptly and in full all persons supplying labor and material in the prosecution of the work contracted for." Henningsen completed the buildings according to contract but failed to pay his laborers and materialmen. The surety paid. This Court applied the eq-

uitable principles declared in the *Prairie Bank* case so as to entitle the surety to the same equitable claim to the retained fund that the surety in the *Prairie Bank* case was held to have. Thus the same equitable rules as to subrogation and property interests in a retained fund were held to exist whether a surety completes a contract or whether, though not called upon to complete the contract, it pays the laborers and materialmen. These two cases therefore, together with other cases that have followed them, establish the surety's right to subrogation in such a fund whether its bond be for performance or payment.

*Pearlman*, 371 U.S. at 137–39, 83 S.Ct. at 235–36.

It is clear that the cases involving sureties claiming priority over assignees apply equally as well to the present case. In *Active Fire Sprinkler Corp.*, the court noted that:

> Simply put, the equitable rights of sureties derive from the equitable rights of the class protected by the bond—in this case, the subcontractors. In *Henningsen*, the Supreme Court stated that the government has an equitable obligation to ensure the payment of laborers and suppliers on government construction projects. 208 U.S. at 410, 28 S.Ct. at 391. *Pearlman* states that laborers have the right to be paid out of an unpaid contract balance when an insolvent general contractor fails to pay them. 371 U.S. at 141, 83 S.Ct. at 237. In both cases, the sureties, who had compensated the unpaid laborers and suppliers, had claims to the unpaid contract balances superior to the claims of bankruptcy estates and creditors. The sureties' claims arose because the sureties were subrogated to the rights of the suppliers and laborers. *See id.; Henningsen*, 208 U.S. at 410, 28 S.Ct. at 391. *Any rights held by the sureties were founded upon the rights of the unpaid laborers and suppliers. See generally* Brady, *Bonds on Federal Government Construction Contracts: The Surety's View*, 46 N.Y.U.L.Rev. 262, 269–76 (1971); Note, *Reconsideration of*

*the Subrogative Rights of the Miller Act Payment Bond Surety,* 71 Yale L.J. 1274 (1962). (Court's emphasis). *Active Fire Sprinkler Corp.,* 811 F.2d at 752.

The Fifth Circuit was presented with the same controversy in *Maryland Casualty Co. v. Dulaney Lumber Co.,* 23 F.2d 378 (5th Cir.1928), *cert. denied,* 277 U.S. 598, 48 S.Ct. 560, 72 L.Ed. 1007 (1928) which arose on a State of Mississippi construction project. The assignee bank claimed that "its equity [wa]s superior to that of the surety." *Id.* at 380. In ruling that the surety's claim was superior to the assignee's claim, the court held that:

> the bank did not become entitled, under either assignment, to any funds except such as were payable to the contractor. *Labor and material claims were superior to any claim held by the bank.* The surety did not appropriate the current estimate in question to its own use, but merely insisted upon a proper application of it. *If that estimate had remained in the highway department, the claims of laborers and materialmen, under the public policy that has been established by law in Mississippi, would have been superior to the claim of the bank.* The latter could acquire no higher rights than the contractor had. It could not acquire anything of value under the assignment, unless the contract resulted in a profit. (Court's emphasis).

*Id.* at 380–81. In this situation, the Mississippi Supreme Court noted in *Reliance Insurance Co. v. First Mississippi National Bank,* 263 So.2d 555, 558 (Miss.1972) that it held in *Canton Exchange Bank v. Yazoo County,* 144 Miss. 579, 109 So. 1 (1926) that "the doctrine of equitable subrogation applied to the bond at its inception and that the surety had a paramount right to the retainage fund over an assignment to the bank of these funds." Therefore, the subcontractors and suppliers of materials which were used in this construction project have the highest priority of all of the claimants.

**E. Sub–Subcontractors and Sub–Suppliers**

■ A sub-subcontractor is protected by a Miller Act payment bond. *United States v. Blake Construction Co., Inc.,* 820 F.2d 139, 139 (5th Cir.1987); *see J.W. Bateson Co. v. United States ex rel. Board of Trustees,* 434 U.S. 586, 594, 98 S.Ct. 873, 877, 55 L.Ed.2d 50 (1978). However, a sub-subcontractor may not claim proceeds of the prime contract if the sub-subcontractor's subcontractor has already included the sub-subcontractors' claim in its claim against the proceeds.

**F. The General Creditors**

In Williams Equipment & Supply Co.'s motion, it admits that $589.92 of its original claim of $2,935.86 against the funds did not involve supplies used on this construction project. The invoices supporting Professional Service Industries, Inc.'s claim reveals that $1,036.50 of its original claim for $3,475.50 was for work unrelated to the instant construction project. Hence, these claims are claims of general creditors and are of the lowest priority. Because there are insufficient funds to pay all of the subcontractors and suppliers, these portions of Williams' and PSI's claims must be denied.

**II. *The Contract Funds Retained By The United States***

Engle filed a counterclaim against the United States seeking the funds the United States retained to set off taxes owed by TAC. The United States moved to dismiss Engle's claim. All of the other claimants also asserted in their answers that the United States should be required to pay that amount into the registry of the Court but they failed to file properly designated counterclaims in accordance with the Federal Rules of Civil Procedure. Due to the resolution of Engle's claim, the Court will treat the other claimants' claims against the United States as having been properly filed.[3] All of the claimants argue that

---

**3.** Binswanger contends that it is not asserting a claim against the United States but is only seek-

ing the contract funds the United States re-

their claims are superior to the United States' claim for unpaid taxes. Additionally, Engle asserts that the United States breached a duty owed to Engle when it failed to require or obtain financially secure sureties.

■ The claimants' claims against the United States fly in the face of the longstanding rule that subcontractors and suppliers on government construction projects may not recover compensation from the United States. *See United States v. Munsey Trust Co. of Washington, D.C.,* 332 U.S. 234, 241, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1947) ("laborers and materialmen do not have enforceable rights against the United States for their compensation"); *Warrior Constructors, Inc. v. Harders, Inc.,* 387 F.2d 727, 729 (5th Cir.1967) ("If a subcontractor is not paid, his only remedy is a suit under the Act"); *Active Fire Sprinkler Corp. v. United States Postal Service,* 811 F.2d 747, 752 (2d Cir.1987) (Miller Act does not allow subcontractors to recover from the United States); *Erickson Air Crane Company of Washington, Inc. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984); *Arvanis v. Noslo Engineering Consultants, Inc.,* 739 F.2d 1287, 1290 (7th Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 964, 83 L.Ed.2d 969 (1985); *United Electric Corporation v. United States,* 647 F.2d 1082, 1084, 227 Ct.Cl. 236 (1981), *cert. denied,* 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981); *Fairchild Industries, Inc. v. United States,* 620 F.2d 807, 809, 223 Ct.Cl. 315 (1980); *Clifton D. Mayhew, Inc. v. Blake Construction Company, Inc.,* 482 F.2d 1260, 1262 (4th Cir. 1973); *United States v. Challinor,* 620 F.Supp. 78, 78 (D.Mont.1985). The claimants argue that the United States waived sovereign immunity when it entered the marketplace and contracted with TAC. However, the United States did not contract with any of the subcontractors, suppliers, assignee banks, or general creditors. The United States consents to be sued only by those parties it contracts with. *See Erickson Air Crane Company of Washington, Inc. v. United States,* 731 F.2d 810

(Fed.Cir.1984); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1550–52 (Fed.Cir.1983). Thus, parties who are not in privity of contract with the United States may not sue the United States. *Active Fire Sprinkler Corp.,* 811 F.2d at 752; *United Electric Corporation,* 647 F.2d at 1084; *Fairchild Industries, Inc.,* 620 F.2d at 809; *United States v. Fryd Construction Company,* 423 F.2d 980 (5th Cir.1970), *cert. denied,* 400 U.S. 820, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970); *Warrior Constructors, Inc.,* 387 F.2d at 729. In *Fryd Construction Company,* the Fifth Circuit ruled that:

> T/N's counterclaim against the United States cannot properly be used as an offset to this tax claim because T/N was not privy to the contract between the United States and Fryd, *Warrior Constructors, Inc. v. Harders, Inc.,* 5 Cir., 1967, 387 F.2d 727, 729. Since T/N could not have brought an original suit against the United States, it may not defend by setoff or counterclaim the tax claim of the United States. *See United States v. Patterson,* 5 Cir., 1953, 206 F.2d 345.

In *Warrior Constructors, Inc.,* the Fifth Circuit noted that:

> "Since there is no contract, express or implied, between a subcontractor and the government, there is no procedure by which the claim of a subcontractor can be presented against the United States...."

*Warrior Constructors, Inc.,* 387 F.2d at 729. The court in *United Electric Corporation* reasoned that:

> The controlling axiom is that the United States may be sued only to the extent that it allows its sovereign immunity to be waived. Through 28 U.S.C. § 1491, the United States has consented to be sued for money damages in certain restricted circumstances, the only relevant one being on the basis of a contract (either express or implied-in-fact) between the United States and the claimant. In the absence of a direct contractual link (express or implied in fact), no enforceable contractual right against the

tained. This is an innovative but erroneous argument.

United States exists, and therefore a subcontractor, in privity only with its private prime, cannot recover directly from the Government for amounts owed it by the prime. *Putnam Mills Corp. v. United States,* 202 Ct.Cl. 1, 8, 479 F.2d 1334, 1337 (1973). This requirement of privity of contract is one important basis for the statement in *United States v. Munsey Trust Co.,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), that "nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation." *Id.* at 241, 67 S.Ct. at 1602 (citing *H. Herfurth, Jr., Inc. v. United States,* 89 Ct.Cl. 122 (1939)).

*United Electric Corporation,* 647 F.2d at 1084. Therefore, the law is clear that none of the claimants can sue the United States for the contract funds it has retained to offset taxes owed by TAC.

Moreover, if the claimants could sue the United States for those funds, they could not recover because the United States' right of offset is superior to their claims. As the Court has noted, the subcontractors and suppliers have the highest priority to the interpled contract funds of the claimants and would have had the highest priority to the retained funds (excluding the United States' claim) had they been interpled.

There is scant case law on the rights of unpaid subcontractors versus the rights of the United States to set off taxes owed by the contractor on a government construction project. However, numerous cases have dealt with the rights of sureties versus the rights of the United States to offset taxes. These cases apply as well because the sureties were subrogated to the claims of the subcontractors by virtue of payments made on the sureties payment bond. *See* Part I.D., *supra.*

On this matter, the court in *Barrett v. United States,* in holding that the government's right of setoff was superior to the surety's subrogation claim, stated:

> It has been long and consistently held that laborers and materialmen do not have legally enforceable rights against

the United States for their compensation. *United States v. Munsey Trust Co., supra; Continental Cas. Co. v. United States,* 164 Ct.Cl. 160 (1964); *United Pac. Ins. Co. v. United States,* 319 F.2d 893, 162 Ct.Cl. 361 (1963). Their remedy is on the surety's payment bond in an action exclusively within the jurisdiction of the district courts under the Miller Act.

> It is equally well settled that the right of the United States to collect taxes and other debts due by the contractor by offsetting the obligations against funds retained under a Government contract is superior to the claims of the surety or of other private parties. *United States v. Munsey Trust Co., supra; Standard Acc. Ins. Co. v. United States,* 97 F.Supp. 829, 119 Ct.Cl. 749 (1951) [*overruled* 428 F.2d 838, 841, 192 Ct.Cl. 754]; *United Pac. Ins. Co. v. United States,* 362 F.2d 805, 176 Ct.Cl. 176 (June 1966).

*Barrett,* 367 F.2d at 836.

In *United States Fidelity & Guaranty Co. v. United States,* 475 F.2d 1377, 201 Ct.Cl. 1 (1973), the court addressed this precise issue and held:

> A surety that pays on its payment bond, however, does not have priority when the United States is asserting a tax or other obligation owed by the prime contractor. Since the surety in this case paid only on its payment bond, it falls in the latter category, and must claim the retainage subject to the tax claim of the United States.

*Id.* at 1383 (citing *Trinity Universal Ins. Co. v. United States,* 382 F.2d 317 (5th Cir.1967), *cert. denied,* 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 873 (1968); *Barrett v. United States,* 367 F.2d 834, 177 Ct.Cl. 380 (1966)); *see also Aetna Insurance Company v. United States,* 456 F.2d 773, 197 Ct.Cl. 713 (1972).

The Fifth Circuit also recognizes that the right of the United States to setoff the unpaid taxes of a contractor from retained contract proceeds is superior to the surety's claim on the payment bond. In *Trinity Universal Insurance Company v. Unit-*

*ed States*, 382 F.2d 317 (5th Cir.1967), the court stated:

> The decisive question in dispute between the parties is whether a surety under a Miller Act performance bond which, under agreement with the government, completes the contract upon contractor's default and expends in such completion more than the full contract price has a right to have the contract price, free from setoff, applied to the completion of the project.

The surety's claim was rejected by the district court upon the authority of *United States v. Munsey Trust, Co.*, 1947, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022. In that case the contractor had failed to pay materialmen and laborers and they had been paid by the surety on the payment bond. The Court held that the laborers and materialmen paid by the surety had no rights to which the surety could be subrogated, and rejected the surety's claim to the retainage free from setoff. The Court noted, however, that a distinction might exist in the case of a surety which chose to complete the contract under its performance bond....

> \* \* \* \* \* \*

In *Pearlman v. Reliance Insurance Co.*, 1962, 371 U.S. 132, 138, 83 S.Ct. 232, 236, 9 L.Ed.2d 190, the Supreme Court recognized the well-established doctrine that "a surety who completes a contract has an 'equitable right' to indemnification out of a retained fund." *Munsey* did not disturb this rule, for as the Court noted in *Pearlman:*

> "We held that the Government could exercise the well-established common-law right of debtors to offset claims of their own against their creditors. This was all we held. \* \* \* We hold that *Munsey* left the rule in *Prairie Bank* and *Henningsen* (infra) undisturbed."

371 U.S. at 140, 141, 83 S.Ct. at 237. The rights of the surety in *Munsey* were those of a subrogee of the contractor. *Whoever, be it the contractor or his surety, pays the laborers and materialmen would be a creditor of the government insofar as the retained funds are concerned. Pearlman* at p. 141, 83 S.Ct. 232 [at p. 237]. Of course, however, *the government has a right to set off claims against its creditors.*

> A different situation occurs when the surety completes the performance of a contract. (Court's emphasis).

*Trinity Universal Insurance Company*, 382 F.2d at 319–20. Thus, the government's right to setoff TAC's unpaid taxes against the contract proceeds was superior to the subcontractors' and suppliers' claims.

Binswanger primarily relies on *Active Fire Sprinkler Corp. v. United States Postal Service*, 811 F.2d 747 (2d Cir.1987); *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1285, 4 L.Ed.2d 1365 (1960); *United States v. Durham Lumber Company*, 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); *Fidelity and Deposit Company v. New York City Housing Authority*, 241 F.2d 142 (2d Cir.1957); *Hall v. United States*, 258 F.Supp. 173 (S.D.Miss.1966). *Aquilino, Durham Lumber Company, Fidelity and Deposit Company*, and *Hall* all involved attempts by the government to recover contract funds held by third parties to satisfy tax liens. In those cases, the government was competing with the sureties on the construction contract's payment bond. Those cases do not involve situations where the government possessed the contract funds and was exercising its right of setoff. In *Active Fire Sprinkler Corp.*, the court allowed a subcontractor to recover contract funds held by the Postal Service. *Active Fire Sprinkler Corp.*, 811 F.2d at 758. The court noted that:

> none of the cases cited by appellees for the proposition that the Miller Act is the subcontractor's sole remedy involved a government agency whose immunity had been waived. \* \* \* In those cases the Miller Act offered the sole remedy because no lien could attach to property held by the United States government. Herein, the United States has waived its immunity and, by doing so, the United States has accepted the possibility of liability being imposed against the agency. \* \* \* Prior to the waiver of immunity, subcontractors possessed an equitable

right, as evidenced by *Henningsen ...*, but apparently lacked a remedy due to immunity. Any equitable rights held by subcontractors as against USPS, which may have been unenforceable where sovereign immunity existed, became enforceable upon immunity being waived.

Thus, the court only permitted the suit because of the waiver of immunity by the Postal Service.

■ Engle alleges that the United States breached a duty owed to Engle when the United States failed to obtain or require financially secure sureties. In *United States v. Smith*, 324 F.2d 622 (5th Cir. 1963), the Fifth Circuit addressed a similar claim. The court noted:

> The facts are not in dispute. Government contracting officers let contracts with the Tropical Pool and Construction Co., Inc. to build two swimming pools at Hunter Air Force Base in Georgia. Tropical obtained materials and services from the appellees as subcontractors and failed to pay the amounts here sued for. It turned out that the contracting officers had failed to require Tropical to provide the payment bond which is required by the Miller Act....

*United States v. Smith*, 324 F.2d at 623. The court further stated:

> The absence of such payment bond made it impossible for the appellees to collect for the materials and labor furnished by them on the job. Tropical had in the meantime become insolvent. Appellees filed this suit on the theory that such failure on the part of the contracting officers amounted to negligence which would support a suit by them against the United States....

*Id.* The court then reversed and remanded directing the district court to dismiss the action. *Id.* at 625.

Additionally, the Seventh Circuit in *Arvanis v. Noslo Engineering Consultants, Inc.*, 739 F.2d 1287 (7th Cir.1984) considered similar allegations. The court reasoned:

> Appellants argue that the Miller Act requires the government to insist that its contractors furnish Miller Act payment bonds. This is incorrect. The statute requires only that contractors obtain performance and payment bonds. The statute places no affirmative obligation on the government, and says absolutely nothing about what happens when the contractor fails to furnish the bond. The Act grants a very narrow and specific right to those in appellants' position: the right to sue on the bond (if there happens to be one) "in the name of the United States for the use of the person suing." 40 U.S.C. § 270b(b). (The United States is thus aligned on the plaintiff's rather than the defendants' side by the equation, providing an additional reason for concluding that the United States cannot properly be a defendant in a Miller Act suit.) There is clearly no waiver of sovereign immunity here. There does seem to be a gap in the statute; there is no provision for the contingency that both the contractor and the government contracting officer will ignore the bonding requirement. However, this is not a gap that we can fill with a remedy—especially in view of the very narrow remedy actually granted by the statute. No citation is needed to reject appellants' suggestion that 28 U.S.C. § 1331 waives sovereign immunity. It merely gives the district court jurisdiction to hear federal claims that are not otherwise barred.

*Arvanis*, 739 F.2d at 1289–90.

Engle mistakenly relies on *Kennedy Electric Company v. United States Postal Service*, 508 F.2d 954 (10th Cir.1974) as authority for its claim. In *Kennedy Electric Company*, the court permitted a subcontractor to sue the Postal Service for retained contract funds for failing to obtain a payment bond. *Id.* at 960. However, the Tenth Circuit does not follow the *Kennedy Electric Company* case in situations like the one presently before the Court. In *McMann v. Northern Pueblos Enterprises, Inc.*, 594 F.2d 784 (10th Cir.1979), the Tenth Circuit concluded:

> Federal district courts have no jurisdiction under the Federal Tort Claims Act over subcontractor suits alleging negligent failure of the federal government or

its officers to require a prime contractor to post a Miller Act bond. *Devlin Lumber & Supply Corp. v. United States,* 488 F.2d 88 (4th Cir.1973) (per curiam); *United States v. Smith,* 324 F.2d 622 (5th Cir.1963); *Kennedy Electric Co. v. United States Postal Service,* 367 F.Supp. 828, 833 (D.Colo.1973), *Aff'd on other grounds,* 508 F.2d 954 (10th Cir. 1974). The Federal Tort Claims Act permits suit against the government only in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1976). As the Miller Act deals exclusively with federal contracts, private persons would never be in a position to require the posting of a Miller Act bond by a contractor. It follows that private persons could not possibly be liable for any negligent failure to insist on the posting of such a bond. Since a private person could not be liable for such failure, the United States could not be under the provisions of the Federal Tort Claims Act.

*McMann,* 594 F.2d at 785–86. The court also distinguished *Kennedy Electric Company.* The court stated:

> Contrary to appellant's assertion, our decision in *Kennedy* provides no authority for bringing a Miller Act claim under the Federal Tort Claims Act. The action against the government in that case was authorized by independent jurisdictional statutes, 28 U.S.C. § 1339 and 39 U.S.C. § 409(a). 508 F.2d at 955. The trial court in *Kennedy* expressly ruled that the Federal Tort Claims Act was not applicable. 367 F.Supp. at 833.

*McMann,* 594 F.2d at 785 n. 3. Hence, Engle's claim that the United States breached a duty to Engle must be dismissed.

### Conclusion

For the above stated reasons, the Court grants summary judgment to the subcontractors and suppliers and finds that they are entitled to the interpled funds in pro rata shares. The Court also grants the United States' motion to dismiss Engle's counterclaim and finds that none of the claimants had a superior right to the funds retained by the United States to offset the unpaid taxes of TAC.

Counsel for Binswanger Glass Company shall submit a separate order in conformity with the foregoing Memorandum Opinion within ten (10) days of the date of entry hereof.